IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID MICHAEL BURKETTE, | : | |
| | : | |
| PLAINTIFF, | : | |
| | : | |
| -VS- | : | CASE NO. 2:07-CV-1121-TFM |
| | : | |
| MONTGOMERY COUNTY BOARD | : | |
| OF EDUCATION AND | : | |
| LEWIS E. WASHINGTON, JR., | : | |
| | : | |
| DEFENDANTS. | : | |

MEMORANDUM BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW the Montgomery County Board of Education and Lewis E. Washington, Jr., Defendants in the above-styled cause, and submit the following Memorandum Brief in Support of their Motion for Summary Judgment.

## I.    SUMMARY OF THE CASE

This is a race discrimination and retaliation case. Plaintiff David Burkette (hereinafter "Burkette") brought this action against the Montgomery County Board of Education (hereinafter "the Board") and Lewis E. Washington, Jr. (hereinafter "Mr. Washington").

Burkette alleges causes of action pursuant to Title VII and 42 U.S.C. §1983 relating to his failure to obtain two coaching positions. The Defendants filed an *Answer* asserting various affirmative defenses and following discovery, this motion is now ripe for consideration.

## II.    SUMMARY OF UNDISPUTED FACTS

### A.    THE PARTIES

#### 1.    PLAINTIFF

Burkette is a black male. (See Exhibit "1"-Deposition of David Burkette page 4 at lines 6-14). He has been employed by the Board as a teacher since 1991 and began teaching at Sidney

Lanier High School in 1999. (Burkette Depo. page 7 at lines 15-18). He continues to teach there presently. (Burkette Depo. page 7 at lines 8-18). From the 1999/2000 school year until the end of the 2005/2006 school year, Burkette also held various coaching positions at Lanier:

| School Year | Principal | Athletic Director | Coaching Position |
|---|---|---|---|
| 1999/2000 | Lewis Washington | Robert Fuller | Football/Basketball |
| 2000/2001 | Lewis Washington | Robert Fuller | Basketball |
| 2001/2002 | Lewis Washington | Robert Fuller | Basketball |
| 2002/2003 | Lewis Washington | Robert Fuller | Basketball |
| 2003/2004 | Lewis Washington | Richard Moncrief | Football/Basketball |
| 2004/2005 | Lewis Washington | Richard Moncrief | Football/Basketball |
| 2005/2006 | Lewis Washington | Richard Moncrief | Football/Basketball |
| 2006/2007 | Lewis Washington | L.C. Cole | None |

(Burkette Depo. page 8 at line 14 to page 13 at line 10).

Since becoming employed by the Board, Burkette has filed three EEOC charges and three lawsuits, excluding the instant EEOC Charge and lawsuit. (Burkette Depo. page 14 at lines 18-22).

| Year | Action | Disposition |
|---|---|---|
| 1997 or 1998 | EEOC Charge | Settled |
| 1998 | Race/Retaliation Lawsuit | Settled |
| 2000 | EEOC Charge | Settled |
| 2002 | Race/Retaliation Lawsuit | Summary Judgment Granted |
| 2003 | EEOC Charge | Dismissed |
| November 2004 | Race/Retaliation Lawsuit | Summary Judgment Granted |

(Burkette Depo. page 14 at line 18 to page 16 at line 12).

2. DEFENDANTS

The Board is the legal entity charged with "the general administration and supervision of the public schools" in Montgomery County pursuant to state statute. See Ala. Code §16-8-8 (1975). Carlinda Purcell, a black female, (hereinafter "Dr. Purcell") was the Superintendent of the Board from December 2004 to August 2006. (See Exhibit "2" - Affidavit of Jimmy Barker ¶3). Linda Robinson, also a black female, was Interim Superintendent of the Board from September 2006 until March 2007. (Barker Aff. ¶3).

2

At all times relevant to this suit, Jimmy Barker (hereinafter "Mr. Barker"), a black male, has been Assistant Superintendent of Human Resources for the Board.  (Barker Aff. ¶¶1-2).

Lewis Washington (hereinafter "Mr. Washington"), also a black male, was Principal of Lanier High School from 1999 until 2007.  (Burkette Depo. page 7 at lines 19-23, page 8 at line 14 to page 13 at line 10).

## B.    BURKETTE'S CLAIMS

In his *Complaint*, Burkette claims that he was wrongfully denied two athletic positions.

### 1.    ATHLETIC DIRECTOR'S POSITION

#### a.    Burkette's Allegations

In May 2006, the Board advertised positions for Athletic Director and Head Football Coach at Lanier.  (Burkette Depo. page 38 at lines 16-17).  With limited exceptions, the Head Football Coach and the Athletic Director for a school are the same person. (Burkette Depo. page 40 at lines 3-7).  Four candidates, all of whom are black males, including Burkette, applied for the positions. (Barker Aff. ¶8). Burkette initially submitted a letter of interest for both positions; however he later declined to be considered for the Head Football Coach position and sought only the Athletic Director position.  (Burkette Depo. page 39 at lines 5-21).  A selection committee was formed which consisted of Booster Club President Shelby Meadows, PTSA President Robert Wagstaff, Booster Club Member Rob Freeman, Assistant Principal Jerone Torbert and Mr. Washington.  (Barker Aff. ¶10). Burkette received an interview with the selection committee.  (Burkette Depo. page 41 at lines 3-4).  L.C. Cole, a black male, was hired on June 20, 2008. (Burkette Depo. page 46 at lines 16-19; See also  Exhibit "3" - June 20, 2006 Personnel Action Report page 5).

Burkette claims that Mr. Washington told members of the selection committee that they could not recommend Burkette for Athletic Director position because of his previous litigation

against the Board.[1]  (Burkette Depo. page 35 at lines 2-12).  Burkette also claims that Mr. Washington told him at various times that he would not be hired into an athletic position because of his lawsuits.  (Burkette Depo. page 35 at line 13 to page 36 at line 5).  Lastly, Burkette claims that Cole was unqualified for the position because he was not a certified teacher. (Burkette Depo. page 47 at lines 7-16).

### b.    Board's Factual Response

Coach Cole, who had previously coached college football, had extensive coaching experience and had demonstrated success as a head football coach.  (Barker Aff. ¶12). Cole also gave the best answers to the interview questions developed by the selection committee.  (Barker Aff. ¶12).  Additionally, unlike Burkette, Cole was willing to take both the Athletic Director position as well as the Head Football Coach position.  (Barker Aff. ¶12).  The selection committee determined that L.C. Cole was the most qualified candidate and recommended him for both the Athletic Director position and the Head Football Coach position.  (Barker Aff.  ¶12).  As to Coach Cole's certification status, he already held a degree in Physical Education and he received an Emergency Certificate from the Alabama State Department of Education rendering him qualified for the accompanying teaching position he was hired for.  (Barker Aff. ¶14).

Burkette admits that despite his multiple EEOC Charges and lawsuits against the Board, Washington submitted his name for a coaching position every year from the 1999/2000 school year until the 2005/2006 school year. (Burkette Depo. page 58 at line 6 to page 59 at line 5).  This includes the recommendation for a 2005/2006 position following Burkette's November 2004 lawsuit. (Burkette Depo. page 12 at line 18 to page 13 at line 2, page 16 at lines 8-12). Burkette has no

---

[1]Burkette alleges that when Shelia Tillis told Mr. Washington that she would vote for Burkette for the position, he removed her from the committee and replaced her with someone else. (Burkette Depo. page 47 at line 21 to page 48 at line 21).

information that Dr. Purcell or any Board members objected to him receiving the position because of his previous lawsuits or for any other reason.  (Burkette Depo. page 52 at lines 4-17).

      2.    ASSISTANT FOOTBALL COACH POSITION

      a.    **Burkette's Allegations**

Burkette also asserts that he was wrongfully denied an assistant football coaching position because of his race.  (*Complaint* ¶8).  According to Burkette, when he inquired regarding open coaching positions in July 2006, both L.C. Cole and Mr. Washington told him that there were no positions open.  (Burkette Depo. page 18 at lines 2-21). However, according to Burkette, Lester Henderson, a white male, was hired for an assistant football coaching position in August or September 2006.  (Burkette Depo. page 21 at lines 13-23). According to Burkette, Henderson filled the position for only two or three weeks before quitting.  (Burkette Depo. page 23 at line 22 to page 24 at line 2).

 According to Burkette, Mr. Washington told Coach Cole "that he got to have a white in that position because Burkette is going to go around and claim racial discrimination."  (Burkette Depo. page 25 at lines 1-15).  Mr. Washington allegedly communicated this instruction to Coach Cole to assistant football coach Steve Holloway, who then reported Washington and Cole's conversation to Burkette.  (Burkette Depo. page 25 at lines 16-22).  Further, according to Burkette, Coach Cole told Henderson that he needed to have a white coach on staff.  (Burkette Depo. page 23 at lines 13-21).  Burkette later claims that Coach Cole told him directly that he wanted a white coach for the position.  (Burkette Depo. page 29 at line 12 to page 30 at line 9). Lastly, Burkette claims that Washington made a similar comment to former Athletic Director Richard Moncrief when he joined the staff in 2003.  (Burkette Depo. page 26 at lines 13-19).

Burkette admits that prior to Henderson filling position, Coach Cole selected a black male for the assistant football coach position.  (Burkette Depo. page 33 at lines 10-23). He alleges that

the black male was subsequently terminated in August 2006 and Henderson then assumed the position. (Burkette Depo. page 33 at line 10 to page 34 at line 9; see also EEOC Charge page 10). However, according to Burkette, after Henderson left the position, Cole selected two black coaches for the position. (Burkette Depo. page 29 at line 12 to page 30 at line 9).

As to his claims of retaliation, Burkette alleges that Mr. Washington told Coach Cole that Burkette could not be hired for a coaching position because of his previous lawsuits. (Burkette Depo. page 35 at lines 2-12).

### b.    Board's Factual Response

Each high school is allotted three assistant football coaching positions. (Barker Aff. ¶15). The specific assignments are left to the discretion of the Head Football Coach, here Coach Cole. (Barker Aff. ¶16). James Cox, a black male, was offered a teaching position at Lanier on July 10, 2006 and was also targeted for a coaching supplement at that time. (Barker Aff. ¶17). However, on August 25, 2006, within days of the beginning of the 2006/2007 school year, Cox's employment was terminated. (Barker Aff. ¶17). Cox was never officially approved by the Board as an assistant football coach. (Barker Aff. ¶17).

The only Lanier assistant football coaches approved by the Board for the 2006/2007 school year were Anthony Adams, Floyd Mathews, Craig Payne and Steve Holloway, all of whom were black males.[2] (See Exhibit "4" - September 26, 2006 Personnel Action Report - Coaching Supplements Roster for Lanier High School; Barker Aff. ¶18). Henderson did not hold a coaching position at Lanier during the 2006/2007 school year. (Barker Aff. ¶19; Roster). His name was never submitted to the Board to receive a football coaching supplement and he did not receive one that school year. (Barker Aff. ¶19).

---

[2]Floyd Mathews is in a grandfathered position and is not counted against Lanier's allotment of three assistant football coaches. (Barker Aff. ¶18).

However, even assuming for purposes of this brief only that Henderson was selected for the position, Burkette admits that it would be customary for an incoming Athletic Director, subject to the Board's approval, to make changes to his coaching staff. (Burkette Depo. page 20 at lines 13-22, page 21 at lines 7-11). Burkette does not assert that Henderson was unqualified for the position. (Burkette Depo. page 47 at lines 17-20). There was no evidence that the Superintendent or Board members had a preference for a white coach. (Burkette Depo. page 27 at lines 13-20, page 28 at line 21 to page 29 at line 2). Further, Burkette is not certain if he reported those comments to the Superintendent and he does not know if the Board members were aware of such comments being made. (Burkette Depo. page 29 at lines 3-10). As to his allegations of retaliation, again, Burkette admits that Mr. Washington submitted his name for a coaching position for several school years despite and during the midst of his litigation. (Burkette Depo. page 58 at line 6 to page 59 at line 5).

### C.    BURKETTE'S EEOC CHARGE

Burkette filed a Charge of Discrimination with the EEOC on January 5, 2007 alleging discrimination on the basis of his race and in retaliation for his past litigation activities against the Board. (See Exhibit "5" - EEOC Charge and Affidavit). Burkette's twenty-page EEOC Affidavit contained allegations regarding the aforementioned Athletic Director's position and allegations related to the treatment of his son, but did not contain allegations regarding the assistant football coach's position. (Burkette Depo. page 34 at lines 10-22; Burkette Aff.). The EEOC issued a right to sue letter on September 24, 2007. (See Exhibit "6"-Dismissal and Notice of Rights). This lawsuit followed on December 26, 2007.

## III.    ARGUMENTS AND CONCLUSIONS OF LAW

### A.    STANDARDS GOVERNING SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law." Rule 56(c), *Federal Rules of Civil Procedure*; See also *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996). "The moving party bears the initial burden of informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). That burden may be satisfied either by demonstrating that there is no evidence of a dispute of material fact or by demonstrating that the nonmoving party has failed to make a showing "sufficient to establish the existence of an element essential to the [nonmovant]'s case, and on which that party will bear the burden of proof at trial." See *Celotex*, supra, 477 U.S. at 322. It is well-settled that the Court, in passing on a motion for summary judgment, must view all evidence and resolve all reasonable inferences in favor of the nonmoving party. *Zipperer v. City of Fort Myers*, 41 F.3d 619, 622 (11th Cir. 1995).

Once the movant has met its burden under Rule 56(e) by showing that there are no genuine issues of material fact or that the nonmovant lacks an essential element, the burden then shifts to the nonmovant to show the existence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604,608 (11th Cir. 1991). In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court noted further "[t]hat the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." In the event the nonmovant fails to advance sufficient evidence to support a jury finding for the nonmovant, the Court may properly grant summary judgment. Id. at 249-50.

### B.    TITLE VII ANALYSIS

In the instant case, Burkette asserts that he was denied the Athletic Director's position in retaliation for his past protected activities and denied a second coaching position because of his race and in retaliation for his past protected activities. *Title VII of the Civil Rights Act of 1964*, as amended, prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2000(a)(1)(as amended).  Title VII further prohibits an employer from retaliating against an employee for engaging in protected activity. Burkette cannot establish a Title VII violation as to any of the claims he asserts.

#### 1.    CLAIMS AGAINST LEWIS WASHINGTON

While it is unclear whether Burkette has brought these claims against Washington in his individual or official capacity, the result is the same.  It is well settled that there is no individual liability under Title VII.  As recently noted by the Eleventh Circuit, "[t]he relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act."  *Rioux v. City of Atlanta*, 520 F.3d 1269, 1275 n. 5 (11th Cir. 2008)(quoting *Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir. 1995)(emphasis in original). Therefore, Washington is entitled to summary judgment as to Burkette's Title VII claims.

#### 2.    TITLE VII CLAIMS PROCEDURALLY BARRED

As to each of the subject positions, Burkette's claims are procedurally barred as a matter of law.

##### a.    Athletic Director Position

As to the Athletic Director position, Burkette failed to timely bring that claim before the EEOC.  It is undisputed that Coach Cole was hired by the Board on June 20, 2006.  (June 20, 2006

9

Personnel Action Report). However, Burkette did not file his EEOC charge until January 5, 2007, 199 days later. (EEOC Charge).

Title VII dictates that a charge of discrimination must be presented to the EEOC within 180 days of the alleged unlawful action. 42 U.S.C. §2000e-5(e)(1). Thus, if the plaintiff fails to bring a timely charge with the EEOC, he is procedurally barred from pursuing a Title VII claim based on the untimely conduct. *Jordan v. City of Montgomery*, 2007 WL 2903010 *3 (M.D.Ala.)(citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002).

> In cases involving discrete retaliatory or discriminatory acts such as termination of employment, failure to promote, denial of transfer, or refusal to hire, a discrete retaliatory or discriminatory act occurs on the day that it happens. *Morgan,* [supra], 122 S.Ct. at 2070, 2073. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id. at 2073. Consequently, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 2072. Each such act starts a new clock for filing charges. Id.

*Thomas v. Alabama Council on Human Relations, Inc.*, 248 F.Supp.2d 1105, 1115 (M.D.Ala. 2003).

Here, there can be no dispute that the Board's hire of the Athletic Director constituted a discrete act. Therefore, because that act occurred more than 180 days prior to January 5, 2007 (or July 9, 2006), said claim is time barred by Title VII's statute of limitations. 42 U.S.C. §2000e-5(e)(1); See also *Morgan*, supra, 536 U.S. at 113. Accordingly, the Board is entitled to summary judgment as to any allegation related to the Athletic Director position.

### b.    Assistant Football Coach Position

Burkette also asserts that he was discriminated against on the basis of his race and in retaliation for his protected activity when Lester Henderson was hired for the assistant football coaching position. However, there was no such allegation contained in his extensive EEOC charge

and affidavit. (Burkette Depo. page 34 at lines 10-22; Burkette Aff.)  It is well settled that a Title VII

plaintiff is limited to pleading only those matters raised before the EEOC:

> The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation. *See Griffin v. Carlin,* 755 F.2d 1516, 1522 (11th Cir.1985). No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge. *See generally* 42 U.S.C. § 2000e-5. EEOC regulations provide that charges should contain, among other things, "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3). A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 589 n. 8 (11th Cir.1994) (*citing Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir.1970)).

*Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000); See also *Stuart v. Jefferson County Department of Human Resources*, 152 Fed.Appx. 798, 801 (11th Cir. 2005)(holding employee who filed an EEOC charge regarding two positions, but added a third position when he filed suit, failed to exhaust his administrative remedies as to the third position).

Because Burkette failed to allege any allegations with respect to this position at the EEOC

level, any cause of action related to this position is procedurally barred as outside the scope of his

EEOC Charge.  Therefore, the Board is due to be granted summary judgment as to any allegation

related thereto.

### 3.    MERITS OF THE TITLE VII CLAIMS

Even assuming Burkette's claims were not procedurally barred, the Board would still be

entitled to summary judgment.

In order to support his Title VII claim, Burkette must establish that the failure to hire him for

the subject coaching positions was the result of intentional discrimination by the Board.

*Merriweather v. Alabama Dept. of Public Safety*, 17 F.Supp.2d 1260, 1267 (M.D.Ala. 1998)(citing

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

Burkette may prove intentional discrimination through either direct or circumstantial evidence. See *Shuford v. Alabama State Bd. of Educ.*, 978 F.Supp. 1008, 1015 (M.D.Ala. 1997).

**a.      Athletic Director Position**

**i.      Direct Evidence**

In order to show intentional discrimination through direct evidence, Burkette must present evidence that "is sufficient to prove discrimination without inference or presumption.  Only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence." *Clark v. Coats & Clark,* 990 F.2d 1217, 1223 (11th Cir. 1993).  Direct evidence is described as evidence which reveals discriminatory intent without the need for inference or presumption.  *Standard v. A.B.E.L.*, 161 F.3d 1318, 1330 (11th Cir. 1998)(citing *Carter v. City of Miami*, 870 F.2d 578, 580-81 (11th Cir. 1989)).  "Direct evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."  *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998).

In *Shook v. St. Bede School*, 74 F.Supp.2d 1172, 1177-78 (M.D.Ala. 1999), when a parent asked why the principal was being terminated, the parent was told that the principal was old and set in his ways.  The Court held that the statement was not direct evidence of discriminatory motive.  "The description of [the principal] as 'old and set in his ways' suggest little more than [the supervisor's] willingness to speak in cliches." Id.

In *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000), a sex discrimination case, the Court held that it was not direct evidence of discriminatory intent that the plaintiff may have been the first female principal in the county, that a board member repeatedly referred to the plaintiff as "Kay Baby", that no male principal had ever been fired, or that her evaluation was no worse than her male replacement.

12

Moreover, in *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266-67 (11th Cir. 1999), the Court held that it was not direct evidence of race discrimination against the white male plaintiff when the supervisor suggested that he had not been hired for position because of his race and gender, when supervisor told employee delivering personnel recommendation that he "wanted the women or minorities on the certificate to be reviewed again" or when same supervisor was asked during deposition whether plaintiff was not hired because he was white and male, responded "it was more than that". Id. at 1266-67.

Burkette offers no direct evidence of retaliation other than that he was told that Washington told members of the selection committee that Burkette could not be hired because of his past litigation against the Board. Burkette also claims that Washington told him at various time, that he could not coach because of his litigation.

As to Washington's alleged comments to others, Burkette's testimony is inadmissible double hearsay and therefore should not be relevant to the Court's analysis. Pursuant to Rule 56(e) of the *Federal Rules of Civil Procedure*, evidence submitted in opposition to a motion for summary judgment must be admissible in order to be considered: "Bald conclusions, opinions and hearsay without supporting specific facts are not admissible and do not create genuine issue of material fact to defeat summary judgment." *Williams v. Hager Hinge*, 916 F.Supp. 1163 (M.D. Ala. 1995) (citing *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)). The Eleventh Circuit recently addressed this issue:

> ..."[E]vidence inadmissible at trial cannot be used to avoid summary judgment." *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976). "Even on summary judgment, a court is not obligated to take as true testimony that is not based on personal knowledge." *Citizens Concerned About Our Children v. School Board of Broward County, Fla.*, 193 F.3d 1285, 1295 n.1 (11th Cir. 1999)(per curiam).

*Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007).

That said, while Burkette may rely upon hearsay for purposes of summary judgment in some circumstances, he may not rely upon testimony that contains inadmissible hearsay if such evidence cannot be reducible to admissible form at trial. See *Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996), reversed on other grounds, 101 F.3d 1363 (11th Cir. 1996)(en banc).  Here, this double hearsay could not be reduced to admissible form at trial. As such, this evidence is inadmissible and not relevant to the summary judgment analysis.

Further, even if such was admissible, Burkette's testimony regarding Shelia Tillis belies rationale.  According to Burkette, Tillis described telling Washington that she would insist on recommending Burkette only to be removed from the committee — before the interviews were even held.  Burkette admits that Tillis was not a member of the selection committee that interviewed him. (Burkette Depo. page 49 at lines 3-17). It is nonsensical that Tillis could take such a stance before even interviewing the candidates.  Construing facts in the light most favorable to the nonmoving party should not prevent the use of common sense.

However, even if Washington's alleged comments were properly before this Court, and assuming for purposes of this brief only that Washington made the comments Burkette claims he did, such would not constitute direct evidence of discrimination here.   It is undisputed that Washington was one member of a five-person selection committee.  Without question, Washington was not a final decisionmaker with respect to any position at issue.  It is additionally without dispute that the selection committee's decision must be recommended by the Superintendent to the Board for final approval.   "[R]emarks by non-decisionmakers...are not direct evidence of discrimination." *Standard,* supra, 161 F.3d at 1330 (citing *E.E.O.C. v. Alton Packaging Corp*, 901 F.2d 920, 924 (11th Cir. 1990)).  In *Standard,* the Eleventh Circuit held that statements in the case of a terminated white employee from non-decisionmakers that company wanted Hispanic workers was not direct evidence of race discrimination.  Id. at 1330.

14

In the present case, school principals are not the final decisionmakers with respect to any personnel decision. The selection committee selects the top candidate and the principal forwards that selection to the Superintendent who, by law, makes the final recommendation to the Board. The Board, again by law, votes to approve or reject that recommendation. *Ala. Code* §16-8-23. Therefore, since Washington was not the final decisionmaker, any alleged comments he made could not constitute direct evidence and are irrelevant to the case at hand.

That said, if Burkette can establish such direct evidence, the Board must prove "that it would have made the same employment decision in the absence of discriminatory motivation." *Wall v. Trust Co. of Ga.*, 946 F.2d 805, 809 (11th Cir. 1991); See also *Standard,* supra, 161 F.3d at 1330.

Burkette has absolutely no evidence that Dr. Purcell or the Board approved L.C. Cole for the Athletic Director position in retaliation against Burkette. (Burkette Depo. page 52 at lines 4-17). Further, Cole had extensive experience as a head football coach and gave the best interview to the selection committee. Even though the interview is a subjective factor, such is a valid consideration by the selection committee. "[S]ubjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions. Subjective reasons can be just as valid as objective reasons." *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000). Moreover, even Burkette admitted that traditionally, the Athletic Director and the Head Football Coach of a school are the same person. Burkette withdrew his name from consideration for the Head Football Coach position, while Cole was willing to accept both positions.

### ii.    Circumstantial Evidence

In the absence of direct evidence, Burkette must prove his claim by use of circumstantial evidence through a framework of shifting burdens of proof and production as contemplated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To prove discriminatory treatment through circumstantial evidence, Burkette must first make out a

*prima facie* case of discrimination. Id. at 802. If he fails to establish a *prima facie* case of discrimination, summary judgment is due to be granted. If a *prima facie* case is established, the burden shifts to the defendant to produce legitimate, non-discriminatory reasons for the alleged adverse employment action. Id. When legitimate, non-discriminatory reasons are proffered, the burden then shifts back to the plaintiff to establish that those reasons are pretextual. Id. at 802-804. The plaintiff has the "ultimate burden of proving the reason to be pretextual". *Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir. 1997). If the plaintiff fails to produce evidence sufficient to permit a reasonable factfinder to disbelieve the defendant's proffered non-discriminatory reasons, summary judgment should be granted. *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1233, 1230 (11th Cir. 2002).

### a.    *Prima Facie* Case

In order to establish a cause of action for retaliation, Burkette must demonstrate that:

(1)    [he] participated in an activity protected by Title VII;
(2)    [he] suffered an adverse employment action; and
(3)    there is a causal connection between the participation in the protected activity and the adverse employment action.

*Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)(citing *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir. 1999)).

Here, Burkette cannot establish a *prima facie* claim because he cannot establish a causal connection between his protected activity and the adverse employment action. See *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir. 1997). In order to establish the final element of causation, Burkette must show that:

"that the protected activity and the adverse employment action were not wholly unrelated." *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)(quotation omitted). Moreover, "[a] plaintiff satisfies this [causation] element if [s]he provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)[.]

16

*Embry v. Callahan Eye Clinic*, 147 Fed.Appx. 819, 830 (11th Cir. 2005)(remarks omitted).

Here, Burkette cannot establish a close temporal proximity between his most recent litigation and the Board's hiring of L.C. Cole as the Athletic Director.  There is a nearly twenty month span between Burkette's November 2004 litigation and the L.C. Cole's hire in June 2006. It is well settled that the temporal proximity necessary to establish evidence of causation must be "very close".  *Higdon*, supra, 393 F.3d at 1220.  Such a long span is too attenuated to establish causation.  In *Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999), a fifteen month span between an employee's sexual harassment complaint and subsequent reassignment was found to fail the causation element.  Similarly, in *Embry*, supra, the nine month span between the employee's complaint of race discrimination and subsequent reprimand was too attenuated to establish causation.  The *Higdon* Court considered the matter as follows:

> The Supreme Court has stated that "mere temporal proximity between…knowledge of protected activity and an adverse...action...must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001)(citations omitted).  The Court cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection.  *See id.* (*citing Richmond v. ONEOK*, 120 F.3d 205, 209 (10th Cir. 1997)(3-month period insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992)(4-month period insufficient)).  If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law.

*Higdon,* supra, 393 F.3d at 1220.

There can be no question that the nearly twenty month span here is insufficient to demonstrate a causal connection.  More importantly, that span is broken by Burkette's approval for the coaching supplement for the 2005/2006 school year following his November 2004 lawsuit. (Burkette Depo. page 8 at line 14 to page 13 at line 10). "[T]here are circumstances when the 'inference of retaliatory intent otherwise created by a short lapse of time can be dispelled when intervening factors are established.'" *Sears v. PHP of Alabama, Inc.*, 2006 WL 932044 *16

(M.D.Ala.)(citing *Wu v. Southeast-Atlantic Beverage Corp.*, 321 F.Supp.2d 1317, 1337 (N.D.Ga. 2004). While most of the "intervening event" cases refer to negative intervening events, the same premise can be applied conversely where a positive event occurs during the intervening time period. Here, not only is there a long lapse of time between the protected activity and employment action, there is a positive intervening event - - - Washington's submission of Burkette's name for a coaching position in 2005. Absent a demonstration of causation, Burkette's cannot establish a *prima facie* case of retaliation and that claim therefore fails as a matter of law.

### b.    Legitimate, Nondiscriminatory Reasons

That said, assuming Burkette could establish a *prima facie* case of retaliation, the Board carries the burden of offering a non-retaliatory reason for its acts. See *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the Board offers a legitimate reason for its employment action, the burden shifts back to Burkette to demonstrate that the explanation was a pretext and that the employer took adverse action because of his protected activities. *Burdine,* 450 U.S. at 256; *Mangum v. West,* 2000 WL 206618 *3 (S.D.Ala.); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997).

The Board asserts that L.C. Cole was the most qualified applicant for the Athletic Director position. He had extensive football coaching experience, he had proven success as a head football coach and he gave the best answers to the interview questions drafted by the selection committee. Because Burkette had no such history, he cannot be appropriately compared to Cole. Burkette was simply not the most qualified candidate.

### b.    Assistant Football Coach Position

As to the assistant football position, if the position had been filled by Henderson (or some other person outside Burkette's protected class---which it was not) and assuming this claim was

not procedurally barred as outside the scope of Burkette's EEOC Charge, Burkette would have a similar burden.

### i.    Direct Evidence

Here again, using double and even triple hearsay, Burkette asserts that Washington told various persons that a white person needed to be hired for the position.  Again, this testimony cannot be reduced to admissible form at trial and therefore should not be considered by the Court on summary judgment.  See *Pritchard*, supra, 92 F.3d at 1135.  Additionally, much of Burkette's testimony did not relate to the filling of this specific position.  That said, even if the position had been filled by a white person and even if said comments could be properly considered as direct evidence, the Board would have made the same employment decision.

As Burkette testified, incoming Athletic Directors make decisions regarding their coaching staff, subject to the Board's approval. There is no evidence that L.C. Cole exercised discriminatory animus of any kind against Burkette as it relates to an assistant coaching position.  Absent discriminatory animus by Cole, no such animus can be imputed to the Board that subsequently approved his decision.

### ii.    Circumstantial Evidence

### a.    *Prima Facie* Case of Race Discrimination

Burkette also fails to establish a *prima facie* case of discrimination as it relates to the assistant football coach position.  No white male was ever hired for the position. On the contrary, all of the assistant football coaches recommended by Cole and subsequently approved by the Board were black males.  Therefore, Burkette cannot establish the fourth element that the position was filled with someone not a member of Burkette's protected group.

19

### b.    *Prima Facie* Case of Retaliation

Again, assuming this cause of action were properly before the Court, the Board denies that Burkette can establish a *prima facie* case of retaliation as to the assistant coaching position. Burkette cannot demonstrate causation between his prior protected activity and the filling of this position. As previously addressed, the nearly two year time span violates the requirement of a close temporal proximity. Additionally, that the coaching position Burkette was awarded during the intervening time period—as passed along by Washington—defies even a notion of retaliation for the 2004 litigation.

Further, while the Board must approve the coaching supplements, assignment of assistant coaching positions is left to the discretion of the Athletic Director. There is no evidence that Cole, a new hire by the Board, was even aware of Burkette's protected activity absent Burkette's speculation that Washington told Cole. Further, Burkette has no evidence that the Board or the Superintendent failed to name him to a coaching position because of his protected activities. Again, as even Burkette admitted, Athletic Directors are given the discretion to determine their staff.

Additionally, it is virtually impossible to conclude that a school with an all black coaching staff discriminated against a black male because of his race. All of the assistant football coaches had football coaching experience with the Board. (Barker Aff. ¶18). Further, Burkette's recitation of Washington's rationale for wanting a white coach to thwart Burkette from claiming discrimination makes no sense. Burkette testified, by way of Coach Holloway, that Washington told Cole that he needed to have a white person on the coaching staff because Burkette—a black male—would file a discrimination complaint. It is irrational to believe that the best way to stave off a discrimination complaint from a black male is to place a white male in the position.

For these reasons, Burkette cannot establish a *prima facie* case of retaliation as to this position and the Board is entitled to summary judgment as to this claim.

## C.    SECTION 1983

### 1.    Section 1983 Based on Title VII Claim

In the instant case, Burkette attempts to bring a separate §1983 cause of action.  To the extent Burkette's §1983 claim is based upon his Title VII cause of action, Burkette's §1983 claim is inappropriate.  "[A]n allegation of a Title VII violation cannot provide the sole basis for a §1983 claim. [A] plaintiff cannot bootstrap an untimely Title VII claim by bringing a §1983 action based on a statutory violation of Title VII."  *Goldstein v. City of Sunrise*, 143 Fed.Appx. 295 (11th Cir. 2005)(citing *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998).

In *Arrington*, the plaintiff attempted to bring a §1983 action based on an untimely Title VII violation.  The Eleventh Circuit upheld the district court's finding that it was improper to attempt to circumvent the administrative requirements of Title VII with a §1983 cause of action.  Id. relying in part upon *Great Am. Fed. Sav. & Loan Assoc. v. Novotny*, 442 U.S. 366, 375-78, 99 S.Ct. 2345, 2350-52, 60 L.Ed.2d 957 (1979)("stating that plaintiffs may not bypass the Title VII administrative process by enforcing their statutory rights under Title VII through 1985.")  However, unlike here, the *Arrington* plaintiff specifically asserted a fourteenth amendment equal protection constitutional violation and was permitted to proceed with her §1983 claim on that basis. No such allegation was made by Burkette.

In *Goldstein*, the defendant appealed a denial of qualified immunity also arguing that the plaintiff's Title VII claim could not provide the sole basis of a §1983 claim.  The Eleventh Circuit again agreed with the argument, but denied the defendant relief citing the complaint's allegation that the defendants "clearly violated established statutory *or constitutional* rights." (Emphasis in original).  Id. at 295.

*McCann v. Mobile County Personnel Board*, 2006 WL 1867486, addressed the same question.  There, the plaintiff sued pursuant to Title VII and §1983 as well. In light of *Arrington*, the Court noted that because the plaintiff's allegations "identified no constitutional rights the plaintiff

[was] addressing through Section 1983, ...she can be vindicating only statutory rights." The only statutes the plaintiff identified were Title VII [and Section 1981]. The court found that "[r]ights under Title VII cannot be upheld under Section 1983" and therefore did not consider her §1983 claim based on Title VII. *McCann*, supra, 2006 WL 1867486 *15 n.17. See also *Moghadam v. Morris*, 87 F.Supp.2d 1255, 1262 (N.D.Fla. 2000).

Here, the only mention of §1983 is in the jurisdictional statement of the *Complaint*. There is no attendant mention of the Defendants violating Burkette's constitutional rights anywhere in the body of the *Complaint* with the exception of the "Prayer for Relief". There is similarly no allegation that the Defendants had a custom or policy of discrimination or that Defendant clearly violated Burkette's rights. Accordingly, to the extent Burkette attempts to bring a §1983 cause of action, such is invalid pursuant to the holding of *Arrington*.

### 2    Official Capacity Claims Against Washington

Additionally, assuming that Burkette has properly pleaded a §1983 claim, claims against Washington in his official capacity are due to be dismissed as redundant. Suit against a defendant in his official capacity is simply another way of bringing an action against an entity of which an officer is an agent. See *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)(quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Since the Board has also been sued as a Defendant, any cognizable §1983 claim against Washington is due to be dismissed as a matter of law.

### 3.    Section 1983 Analysis

That said, even if Burkette's §1983 claim was properly asserted, the evidence is analyzed under the same framework as Title VII above and the Defendants adopt the Title VII arguments asserted supra as if fully restated here.. See *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985). To the extent Burkette's §1983 claim is based upon some constitutional violation, Burkette's *Complaint* fails to allege a specific constitutional violation. *Heine v. Rice,* 2001 WL 1338780 *8

(M.D.Fla.)("[T]o assert any claim under §1983, the plaintiff must identify the specific constitutional right that has been infringed.")(citing *Singer v. Fulton County Sheriff,* 63 F.3d 110, 115-16 (2d Cir. 1995), cert denied, 517 U.S. 1189 (1996).   Additionally, §1983 cases implicate a "heightened pleading" standard.  "Heightened pleading is the law of the circuit when §1983 claims are asserted against government officials."  *Laurie v. Alabama Court of Criminal Appeals*, 256 F.3d 1266 (11th Cir.2001)(quoting *GJR Investments, Inc. v. County of Escambia, Fla*., 132 F.3d 1359, 1367 (11th Cir. 1998)(holding that no equal protection claim stated in §1983 case where "the words 'equal protection' do not appear anywhere in the complaint.").  Here, Burkette merely inserted the statute "42 USCA §1983" in his jurisdictional description with no further reference to the constitutional right allegedly violated.  (*Complaint* ¶4).  That being said, assuming that Burkette's intent was to allege an §1983 claim pursuant to an equal protection violation against the Defendants, such liability cannot be maintained.

Section 1983 provides a remedy for deprivation of federally protected rights caused by persons acting under the color of state law.  *Almand v. DeKalb County*, 103 F.3d 1510, 1512 (11th Cir. 1997).  Local governmental bodies such as school boards are "persons" within the meaning of §1983.  See *Monell*, supra, 436 U.S. at 690-91. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)(quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).  Burkette must prove that a state actor deprived him of a right conferred by a federal statute or by the Constitution.  See *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1313 (11th Cir. 2001).  "A §1983 complainant must support her claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations."  *Bluitt v. Houston Independent School Dist.*, 236 F.Supp.2d 703, 719 (S.D.Tex. 2002)(citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), cert. denied, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990);

*Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986); *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985).

To the extent Burkette asserts that the Board is liable for the actions of Washington, it is well settled that a local governmental body such as the Board, cannot be found liable under §1983 on a *respondeat superior* theory.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 828, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).  The Board is only liable for its own acts, not for the acts of its employees. See *Monell*, supra, 436 U.S. at 691-94.  "Local governments are directly liable under §1983...for constitutional deprivations resulting from (1) an unconstitutional action taken pursuant to an officially promulgated policy statement, decision, regulation or ordinance; or (2) governmental custom, even though not authorized by written law." *Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 713 (11th Cir.1992) (citing *Monell*, supra, 436 U.S. at 690-91).  Burkette must prove that an official policy or custom of the Board was a "moving force" behind the alleged constitutional deprivation.  See *Farred v. Hicks*, 915 F.2d 1530, 1532-33 (11th Cir. 1990).  Further, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." Quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.), cert denied, 534 U.S. 820 (2001)(following *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)); See also *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)(also following *Brown*, supra, 520 U.S. at 407).

To establish a violation by policy, Burkette must demonstrate that a decisionmaker with final policymaking authority violated his federally protected rights. In this case and pursuant to state statute, the Board constitutes the only entity with final policymaking authority. Burkette has not and cannot identify a policy of the Board which was the moving force behind any alleged violation of his federally protected rights.

Absent a policy, Burkette must demonstrate that the Board had a "longstanding and widespread" custom of failing to hire employees for coaching positions on the basis of race or in

24

retaliation for engaging in protected activities. See *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991); See also *Monell*, supra, 436 U.S. at 694. Burkette has presented no evidence of any such custom.

The third instance in which a Board can be held liable pursuant to §1983 is if a decision was made by an official who possesses "final authority to establish municipal policy with respect to the action ordered." *Hamilton v. Montgomery County Bd. of Educ.*, 122 F.Supp.2d 1273, 1289 (M.D. Ala. 2000) (citing *Brown, supra,* 923 F.2d at 1480). However, the Eleventh Circuit has held that §1983 liability cannot be established based on a subordinate official's decisions if the final policymaking body had the right to exercise its own discretion. *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997). Additionally, where the Board has adopted a policy, any alleged deviation from that policy by an employee of the Board does not represent policy of the Board. See *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1173 (11th Cir. 2001), vacated on other grounds, 536 U.S. 953 (2002). Under Alabama law, the Board alone, subject to the Superintendent's recommendation, has final decisionmaking authority with respect to employment actions. See *Ala. Code* §16-8-23. Washington possesses no authority whatsoever to effect the employment status of any employee.

None of the Defendants committed any act against Burkette that violated his constitutional rights. Regardless, Burkette cannot point to and does not identify any policy or custom of the Board that caused some violation (assuming any violation could be established) and Burkette cannot establish a custom of retaliating against employees or failing to hire Black employees that is so permanent and well-settled with the Board that it has the force and effect of law. Accordingly, the Defendants are entitled to summary judgment on Burkette's §1983 claim.

a.    QUALIFIED IMMUNITY FOR INDIVIDUAL CAPACITY CLAIMS

Assuming Burkette's §1983 claim is properly asserted, Washington would be entitled to qualified immunity for claims brought against him in his individual capacity. Qualified immunity is

designed to protect and "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." Quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)(citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). Once the defendant raises qualified immunity as a defense, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate. *Ferraro*, supra, 284 F.3d at 1194. Qualified immunity protects a defendant from a plaintiff's damages claim in his individual capacity if the defendant can establish that he acted within his discretionary authority in a manner that violated no "clearly established statutory or constitutional rights of which a reasonable person would have known" (or in "good faith"). *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Therefore, the first question to be answered by the Court is whether the defendant was "acting within the scope of [his] discretionary authority when the alleged wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)(quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988)).

### i. Discretionary Acts

According to the Eleventh Circuit, the determination of whether an employee is performing a discretionary function is two-fold. "We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). There can be no dispute that the acts of which Burkette complains were in fact discretionary acts taken within Washington's authority as Lanier's Principal. Washington was acting within his discretionary authority when he served on the selection committee for the Athletic Director and Head Football Coach positions and was similarly acting within his discretionary authority when he submitted Coach Cole's name to the Superintendent for recommendation. As to the assistant football coach position, Washington was acting within his discretionary authority when he submitted the names

of Coach Cole's assistant football coaches to the Superintendent for approval by the Board. Each of these were a part of Washington's responsibilities as Principal.

### ii.    Two-Part Analysis

Once the individual defendant has established that they were acting within their discretionary authority, the burden shifts to Burkette to establish that qualified immunity is not appropriate. See *Vinyard v. Wilson*, 311 F.3d 1340, 1346-47 (11th Cir. 2002) (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). The Supreme Court has established a two-part analysis for qualified immunity.  First, the Court must determine whether the plaintiff's allegations, if true, establish a constitutional violation. Id. If it is established that a constitutional right would have been violated under the plaintiff's version of the facts, the court must determine whether the constitutional right asserted was clearly established.  See *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Ferraro*, supra, 284 F.3d at 1194.  In order to show that the law was clearly established, "the right must be so specific that 'in the light of pre-existing law the unlawfulness must be apparent.'"  *Gorman v. Roberts*, 909 F.Supp. 1493, 1504 (M.D. Ala. 1995).

### a.    No Violation of Constitutional Right

The Court must first determine whether Burkette's allegations, if true, establish a violation of a constitutional right.  Burkette has no evidence, outside of his own conjecture, that his failure to obtain the coaching positions were made on the basis of his race or in retaliation for his past protected activities.  For the same reasons discussed in the Title VII section of this brief, Burkette cannot establish that any of the actions taken by Washington were in violation of a constitutional right.

### b.    Not a Violation of Clearly Established Law

While Defendants concede that it is clearly established that they cannot discriminate against an employee on the basis of his race, Burkette has not established a constitutional violation with

respect to any of the allegations he has raised. "[W]ithout a constitutional violation, there can be no violation of a clearly established constitutional right." *Gorman*, supra, 909 F.Supp. at 1505 (quoting *Burrell v. Board of Trustees of Ga. Military* College, 970 F.2d 785, 791 (11th Cir. 1992))(citing *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992)).

Accordingly, there is no clearly established violation of a constitutional right. Even assuming that Burkette could establish some appropriately asserted constitutional violation, it was not clearly established that any of the actions taken by Washington were violative of the *Constitution*. It was certainly not clearly established that Washington could not sit as a member of the selection committee and pass said recommendation on to the Superintendent. It was also not clearly established that Washington could not pass Coach Cole's staffing recommendations along to the Superintendent. Accordingly, Burkette is entitled to qualified immunity in his individual capacity.

## IV.    CONCLUSION

For each of the positions Burkette challenges, the Defendants offered legitimate and non-discriminatory rationale for its decisions. Further, it is well-settled in the Eleventh Circuit that statutes like Title VII are not intended to make federal courts into super-personnel departments:

> Title VII is not designed to make federal courts "'sit as a super-personnel department that reexamines an entity's business decisions.'" *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1997)(stressing that "federal courts do not sit to second-guess the business judgment of employers"). Work assignment claims strike at the very heard of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priority. The same concern exists for public entities such as the [police department], which must balance limited personnel resources with the wide variety of critically important and challenging tasks expected of them by the public.

*Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244 (11th Cir. 2001); See also *Chapman*, supra, 229 F.3d at 1030; *Denney*, supra, 247 F.3d at 1188; *EEOC v. Total Sys. Services*, 221 F.3d 1171, 1176 (11th Cir. 2000); *Cofield v. Goldkist*, 267 F.3d 1264, 1269 (11th Cir. 2001).

Burkette cannot establish that the actions taken were based on illegal reasons of race discrimination and retaliation.

Wherefore the premises having been considered, the Defendants respectfully request the Court to grant the Defendants' Motion for Summary Judgment and dismiss the Plaintiff's claims as a matter of law.

Respectfully Submitted this 18th day of July, 2008.

> MONTGOMERY COUNTY BOARD OF EDUCATION AND LEWIS E. WASHINGTON, JR., DEFENDANTS,
>
> By:   /S/   Jayne Harrell Williams
>
> Elizabeth Brannen Carter (3272-C-38E)
> Jayne Harrell Williams (6544-Y-85H)
> HILL, HILL, CARTER,
>     FRANCO, COLE & BLACK, P.C.
> Post Office Box 116
> Montgomery, Alabama 36101-0116
> (334) 834-7600
> (334) 263-5969 - fax
> Email: ECarter@hillhillcarter.com
> Email: JHWilliams@hillhillcarter.com
> Counsel for Defendants
> wwm/6630.0109/f:Brief.wpd

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date served a true and correct copy of the foregoing *Answer on Behalf of Defendants Montgomery County Board of Education and Lewis E. Washington* upon David Burkette, Post Office Box 9257, Montgomery, Alabama 36108 by placing same in the United States Mail, postage prepaid and properly addressed this the 18th day of July, 2008.

> /S/   Jayne Harrell Williams