`IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

2008 AUG 15  P 10: 28

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

David Burkett,                              )
                                            )
          Plaintiff,                        )
                                            )
vs.                                         )   CIVIL ACTION NO. 2:07-cv-1121-TFW
                                            )
Montgomery Board of Ed., et al.,            )
                                            )
          Defendants.                       )

**PLAINTIFF'S RESPONSE IN OBJECTION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Comes now Plaintiff, David Burkette and responds to the motion for summary

judgment submitted by Defendants.   The Defendants argue that summary judgment is

warranted in this case because no genuine issues of material fact exist, and, therefore,

they are entitled to judgment as a matter or law.  The Plaintiff responds that, indeed, there

exist genuine issues of material facts. Therefore, summary judgment is inapplicable in

this instance.  Defendants' motion for summary judgment should be denied, and this

cause should set for a jury trial.

In support of the Plaintiff's response, the following evidentiary submissions are

submitted and labeled accordingly:

Exhibit        Document

 A:              Declaration of David Burkette

 B:             Affidavit of Pam King

 C              Affidavit K.T. Brown

 D              Affidavit of Wanda Russell

 E              Affidavit of Kaneshia Russell

F          Affidavit of Alverene Butler

G          Affidavit of Georgette Johnson

H          Affidavit of Nance Bell

I          Affidavit of Alvin Butler

J          Affidavit of Terry Tallie

K          Affidavit of Valerie Brown-Jones

L          Affidavit of  Kenneth Smith

M          Affidavit of  Richard Wilson

N          Affidavit of Shelby Meadows

O          Affidavit of Valerie Brown

## SUMMARY JUDGMENT STANDARD

Summary judgment may be entered on a claim only if it is shown, from the pleadings, depositions, answers to interrogatories and affidavits, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), *Federal Rules of Civil Procedure. (F.R.Civ.P.)*.   Under Rule 56(c), "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  A fact is 'material' if it might affect thee outcome of the suit under governing substantive law." *See Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).    In ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the non-moving party, and the Court must view the facts presented and draw all reasonable inferences, arising from such facts, in the light most favorable to the against the non-moving party, the Plaintiff herein.  *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *see also Cooper v. Southern Co.,* 390 F.3d 695, 723 (11th

Cir.2004) and Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990).

Always, in a motion for summary judgment, the burden of proof is upon the moving party, the Defendants herein, to establish its *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that it is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). If, *and only if*, the moving party carries out that initial burden is the non-moving party required to come forward with evidence supporting each essential element of its claim. *Celotex Corp. v. Catrett; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brieteon*, 883 F.2d 293 (11th Cir. 1989). The moving party is not entitled to judgment as a matter of law unless the plaintiff, who carries the ultimate burden of proving the action, is able to adduce admissible evidence with respect to each element of it claim to create a material factual dispute. Clark v. Coats & Clark, Inc. 929 F.2d 604, 608 (11th Cir.1991) *See Celotex Corp v. Catrett, supra; Bennett v. Parker,* 898 F.2d 1530 (11th Cir. 1990).

Finally, in assessing and deciding a motion for summary judgment, the court's function is to determine *only* whether there exist genuine and material issues of fact to be tried and whether the moving party is entitled to judgment as a matter of law. *See Dominick v. Dixie National Life Insurance Co.*, 809 F.2d 1550 (11th Cir. 1987). The court is not empowered to decide any material factual issues. When the standard enunciated above is analyzed utilizing the facts of this case, it is readily discernable that summary is not applicable in this instance.

## Retaliation

Next the Defendants argue that Plaintiff's claim of retaliation should be dismissed. The Plaintiff submits that he has submitted sufficient evidence to present a prima facie case of retaliation. Therefore, on this issue, too, the Defendants' motion for summary judgment should be denied.

A retaliation claim under Title VII is analyzed utilizing the framework set forth in *McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973). Under the Eleventh Circuit standard, to establish *a prima facie* claim of retaliation under Title VII, Plaintiff Barnes must allege that he was engaged in statutorily protected activity; that an adverse action occurred; and that such action was causally related to that protected activity. *Coutu v. Martin County Bd. of County Commissioners*, 47 F.3d 1068, 1074 (11th Cir. 1995). Indeed, the Plaintiff was engaged in a protected activity. It cannot be argued that filing a claim of sexual harassment is not within the framework of protected activity. The Plaintiff was terminated. Again, it cannot be argued that termination from employment does not qualify as an adverse employment action. An adverse employment action occurs when conduct alters the employee's compensation, terms, conditions, or privileges of employment and deprives him of employment opportunities, or adversely affects his status an employee. *Gupta v .Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000). ).

Title VII prohibits retaliation by an employer because an employee resisted discrimination. Specifically, § 704(a) of Title VII provides:

4

> It shall be an unlawful employment practice for an employer
> to discriminate against any of his employees or applicants for
> employment ... because he has opposed any practice made
> an unlawful employment practice by this title, or because he
> has made a charge, testified, assisted, or participated in any
> manner in an investigation, proceeding or hearing under this
> title.

42 U.S.C.A. § 2000e-3(8)(1982).    The Plaintiff alleges that he was retaliated for

opposing what he considered to be discriminatory acts against him.  § 704(a) recognizes

the type of protected conduct alleged by the Plaintiff.

The Eleventh Circuit has stated, "Title VII's protection against retaliatory

discrimination extends to adverse action which falls short of ultimate employment

decisions." *Wideman v. Wal-Mar Stores, Inc*., 141 F.3d 1453 (11th Cir. 1998).  And in

*Bass v. Board of County Com'rs, Orange County, Fla.* 256 F. 3d 1095, 1117-18 (11th Cir.

2001), *reh'g denied en banc*, 273 F.3d 1117 (11th Cir 2001), the Eleventh Circuit stated

that an adverse employment action is not only an ultimate employment decision, such as

discharge or failure to hire, but also "other conduct that alters the compensation, terms,

conditions, or privileges of employment, deprives him or her of employment

opportunities, or adversely affects his or her status as an employee."

The Defendants attempt in brief to offer some non-retaliatory reason for

Defendants' adverse employment action.  The proffered reason is that Williams had made

a decision in May to terminate the Plaintiff but because Plaintiff was on suspension, she

could not terminate him until he returned.  Well, that reasoning is certainly suspect; it is

pretextual.

Always, in a motion for summary judgment, the burden of proof is upon the

moving party to establish its *prima facie* entitlement to summary judgment by showing

the absence of genuine issues and that it is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). If, *and only if*, the moving party carries out that initial burden is the non-moving party required to come forward with evidence supporting each essential element of its claim. *Celotex Corp. v. Catrett; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brieteon*, 883 F.2d 293 (11th Cir. 1989).

The moving party is not entitled to judgment as a matter of law unless the plaintiff, who carries the ultimate burden of proving the action, is able to show some evidence with respect to each element of it claim. *See Celotex Corp v. Catrett, supra*; *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

Finally, in assessing and deciding a motion for summary judgment, the court's function is to determine *only* whether there exist genuine and material issues of fact to be tried and whether the moving party is entitled to judgment as a matter of law. *See Dominick v. Dixie National Life Insurance Co.*, 809 F.2d 1550 (11th Cir. 1987). The court is not empowered to decide any material factual issues. When the standard enunciated above is analyzed utilizing the facts of this case, it is readily discernable that summary is not applicable in this instance.

The Plaintiff timely alleged acts, which, if true, would indeed constitute retaliation. He states in his declaration that Washington specifically stated that he had been instructed not to recommend the Plaintiff for any position because the Plaintiff had filed numerous lawsuits. Also, the Plaintiff states that Washington stated that he, himself, would not recommend Plaintiff for any positions because Plaintiff had file too many lawsuits.

As stated, under the summary judgment standard above, the court must refrain from deciding such factual issues.    Revenue, at this juncture, bears the burden of demonstrating to this Court that there is no dispute as to any material fact in this case. Long ago, *in Warrior Tombigbee Tansp. Co. v. M/V Nan Fung*, 695 F.2d 11296, the Eleventh Circuit Court of Civil Appeals set this standard. The Plaintiff has produced evidence, which demonstrates a *prima facie* case of retaliatory conduct on behalf of the Defendant.

Next, the Defendants in a most conclusory manner argue that the Plaintiff (1) has failed to present a *prima facie* of racial discrimination or retaliation, (2) has not suffered any adverse employment action, and cannot prove a causal link between the filing of the EEOC complaint (Brief, pp. 5-6).  The Defendant's argument for summary judgments on these bases lacks merit, too.  The Defendant correctly states in its brief that a retaliation claim under Title VII is analyzed utilizing the framework set forth in *McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973).

In stating that the Plaintiff has not suffered an adverse employment action, the Defendant has apparently construed "adverse employment action" to an ultimate employment decision.  While some circuits require plaintiffs claiming adverse action to demonstrate that their employer has subjected them to "an ultimate employment decision," the Eleventh Circuit holds otherwise. *See Wildeman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998) (Title VII protection against retaliation discrimination extends to adverse actions which falls short of ultimate employment decisions, finding adverse employment action where plaintiff's employer mischaracterized her attendance, issued written reprimands and suspensions, solicited co-workers for negative comments);

*Bass v. Bd. of County Com'rs, Orange County Fla.,* 256 F.3d 1095 (11th Cir. 2001), *reh'g denied en banc*, 273 F.3d 1117 (11th Cir. 2001) (Adverse employment action is not only an ultimate employment decision, such as failure to hire or discharge, but also other conduct that alters employee's compensation, terms, conditions, or privileges of employment, deprives the employee of employment opportunities, or adversely affects his or her status as an employee). In this instance the Washington, a decision maker, denied the Plaintiff the right to coach at Lanier.

<u>**Prima Facie Case of Discrimination and Retaliation**</u>

Under Title VII, it is unlawful "to discharge an individual, or otherwise to discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C.A. § 2000e-2 (a)(1). Essentially, the Plaintiff alleges that his race was a motivating factor for Defendant's decision makers to discriminate against him on the basis of her race. as envisioned in 42 U.S.C.A. § 2000e-2(m).

The Plaintiff has put forth sufficient evidence to state a prima facie case of discrimination. In establishing a prima facie case of discrimination, Plaintiff is only required to present some evidence to demonstrate that the decision of the Defendant was based on the discriminatory criterion. *See Int'l Brotherhood of Teamsters v. United States,* 432 U.S. 324, 358 (1977). Once the Plaintiff presents such evidence, a presumption of illegal discrimination is presented. If this *prima facie* case is presented, the Defendant is then required to produce a legitimate non-discriminatory reason for its employment decision. *Holifield v. Reno,* 115 F.3d 1555, 154 (11th Cir. 1997).

The Plaintiff has presented a prima facie case, the reasons advanced by the Defendant to support its discriminatory practices are not the real reasons for the adverse employment decision; therefore, they are pretextual. Plaintiff has presented evidence to cast sufficient doubt as to the Defendants' proffered reasons to permit a reasonable fact finder to conclude that Defendant's reasons were not the actual motivation in making its decision in regard to James' terms and conditions of employment with Defendant. *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994) [citation omitted]. When the Court views the evidence submitted, it can readily discern the same.

The Plaintiff alleges in his Complaint that Defendant discriminated against him because of her race, black (African American). Her claim of discrimination is evaluated under the analysis set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the framework of *McDonnell Douglas*, to establish a prima facie case of discrimination, Plaintiff is required to show that she is a member of a protected class, that she was qualified for the position at issue, that she suffered some adverse employment action, and some other evidence, which allows an inference of discrimination. *See Verizon South, Inc.,* 299 F.Supp.2d 1235, 1241 (M.D.Ala. 2003) (Thompson, Judge), *citing Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981).

Establishing a prima facie merely requires the plaintiff to establish "facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). The law does not require that the standard to establish a *prima facie* be rigid or inflexible. *See e.g., Schoenfeld v. Babbitt,* 168 F.3d 1257, 1268 (11th Cir. 1999) ("...disparate treatment can be established by any proof of actions taken by the employer

from which we infer discriminatory animus *because experience has proved that in the absence of any other explanation it is more likely than not that those action were bottomed on impermissible consideration.*") (citing *Hill v. Metro. Atlanta Rapid Trans. Authority*, 848 F.2d 1522 (11th Cir. 1988) (internal punctuation omitted) [Emphasis supplied].

Assuming that there is no direct evidence of employment discrimination, the Plaintiff, nonetheless, has created a presumption of discriminatory intent by establishing a prima facie case of discrimination. *See McDonnell Douglas Corp v. Green*; *Chapman v. Al Transp*. 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). If the *prima facie* case of discrimination is established, it raises a *rebuttal presumption that the employer is liable for the proscribed practice. Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

At this juncture, the defendant must articulate some legitimate, nondiscriminatory reason for refusing to hire the plaintiff. *McDonnell Douglas*, 411 at 802. The Plaintiff has shown pretext for discrimination by producing evidence that similarly situated employees with defendant, outside of the Plaintiff's protected group, received more favorable treatment than plaintiff. E.g. *Avarado v. Board of Trustees,* 928 F.2d (4th Cir. 1991) (affirming the district court's finding that the employer's articulated reason for not promoting the plaintiff was pretextual, where the plaintiff had performed satisfactorily and had more experience and seniority than the employee who was promoted). Unlike the Defendant's assertion in its memorandum, the Plaintiff has produced evidence of a prima facie case of discrimination. Only a defendant articulates such a legitimate, non-

discriminatory reason for the disparate treatment will the plaintiff be required to come forward with evidence showing that the articulated reason is pretextual.

The Defendants hired a white coach to coach at Lanier. They would not allow Burkette to volunteer. Defendants have not come forth with a valid reason for the disparate treatment. If, indeed, the articulated reason is pretextual, summary judgment in favor of the Defendant is inappropriate. *See Reeves Sanderson Plumbing Prods.*, Inc. 530 U.S. 133, 148 (2000); *Chapman*, 229 F.3d at 1025, n.11.

The Defendans correctly states in its brief that a retaliation claim under Title VII is analyzed utilizing the framework set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). Under the Eleventh Circuit, to establish *a prima facie* claim of retaliation under Title VII, James must allege that she was engaged in statutorily protected activity; that an adverse action occurred; and that such action was causally related to that protected activity. *Coutu v. Martin County Bd. of County Commissioners*, 47 F.3d 1068, 1074 (11th Cir. 1995). Indeed, the Plaintiff was engaged in a protected activity. Adverse employment action was taken against him; indeed, he has put forth a prima facie case or retaliation.

The Defendants' proffered reasons for having taken the adverse employment action against the Plaintiff is a mere pretext for the disparate treatment of the Plaintiff. The Plaintiff has, nonetheless, offered evidence from which a fact finder could rationally conclude that the Defendant's stated reason is a pretext for discrimination and retaliation. Therefore, summary judgment should be denied.

The declarations of several peopled demonstrate that evidence has been submitted by the Plaintiff that demonstrated that he was retaliated against for having filed lawsuits

against the Board.   Richard Wilson states that Washington told the students that Burkette

was not considered for various positions because he had filed lawsuits.

Respectfully submitted,

DAVID MICHAEL  BURKETTE

## CERTIFICATE OF SERVICE

I hereby certify that I have this 14 day of  August, 2008 served a copy of the foregoing on
the following  with the Clerk of the Court, who will perfect service upon the following
using the CM/ECF SYSTEM.

DAVID MICHAEL  BURKETTE

P.O. Box 9257
Montgomery, Alabama 36108
(334) 230-9492
E-mail:  coachdburkette@yahoo.com

12

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID MICHAEL BURKETTE,           )
                                  )
    Plaintiff,                    )
                                  )
vs.                               )    CIVIL ACTION NO. 2:07-cv1121-TFM
                                  )
MONTGOMERY COUNTY BOARD, *et al*.)
LEWIS WASHINGTON, JR.             )
    Defendants.                   )

### DECLARATION OF DAVID MICHALE BURKETTE

I, David Burkette, do hereby solemnly swear, declare, verify, or state or affirm under the penalty of perjury, the following statement is true and correct. I make this statement from personal knowledge. I am over the age of 19 years, and I am a resident of the State of Alabama. I am the Plaintiff.

During May, June, July, and August 2006, I had several conversations with Mr. Lewis Washington, Jr., the principal at Lanier High School, about the hiring practices of the Montgomery County Board of Education. During those conversations, Mr. Washington stated to me that I had been "blackballed" from any consideration for any coaching or administrative positions. He stated that I would not ever be considered for any coaching or administrative positions because I had filed too many lawsuits against the Board.

In May or June 2006, I applied for the Athletic Director and the head coach positions at Lanier High School. I was eminently qualified for those positions. Washington, as principal, was the person who made recommendation to the Board for these positions originating at Lanier. After I had applied for these positions, Washington

𝔸

stated that the Board was not going to consider me for any athletic or administrative position because I had filed lawsuits.   Additionally, in August 2006, Washington, told me that he had direct instructions from school board members not to hire me for any position because I had a current lawsuit pending against the Board.

He specifically stated that because I had filed numerous lawsuit he, himself, would never hire or recommend me for any position.   In October, 2006, Washington stated that I was the "only nigger" that he knows with advance degrees that cannot get a supervisory position, and that it all stemmed from those "damn lawsuits."  He further told me that he had advised every committee member not to consider me for any position and to take into consideration my history of lawsuits. Then, he told me "Go file a lawsuit against me."

In July 2006, after L.C. Cole had been hired as AD and head football coach at Lanier, I applied for several assistant coach positions in football, basketball, and track Previously, I had coached as an assistant football and  as a head basketball coach.   After I had applied for assistant football coach,  L.C. Cole advised  me that Washington had instructed him not to consider me for any coaching positions—not even on a volunteer basis. I stated that I would volunteer.  He stated that I could not participate as a volunteer on the orders of Mr. Washington.  And he told me that there was no more positions as assistant football coach available.  However, in August 2006, he hired several coaches. Later, he hired a white coach, Lester Henderson.  Henderson said that he was told that he was hired because they needed a white coach.

Washington specifically stated that I would never be a coach on any level in the system as long as he was employed with Board.  He stated that while I was walking

2

around taking about coaching positions, I should be concentrating of trying to keep my teaching job.  He stated that not only would I not get a position at Lanier but that I would not gat any position at any other high school because not other principal wanted me at there respected schools because of my filing of lawsuits against the Board.

I declare under penalty that the above is true and correct.

Done this 12th Day of August, 2008.

David Burkette.

## FEDERAL MEDIATION AND CONCILIATION SERVICE
## LABOR ARBITRATION

| | |
|---|---|
| In the Matter of Arbitration Between | ) |
| | ) |
| The Montgomery County Board of Education | ) |
| | )   FMCS Case No.  070710-3450-3 |
| and | ) |
| | ) |
| David Burkette | ) |

### AFFIDAVIT OF PAM KING
=====================================================================

BEFORE ME, the undersigned appeared and having been duly sworn in, testified as follows:

My name is Pam King.  I am over the age of nineteen (19) and currently reside at 835 Queensbury Drive in Montgomery, Alabama.  I am aware the Superintendent of the Montgomery County Board of Education has recommended to suspend Sidney Lanier High School teacher David Burkette for five days without pay.  While I have no direct personal knowledge of the facts made the basis of the suspension, I do have first hand knowledge of information that may prove the suspension was made for personal or political reasons.

My daughter, Tippany King, graduated from Sidney Lanier High School this past year. Sidney Lanier High School is commonly referred to as Lanier High School.  This past year, my daughter took trigonometry for her Math course.  However, she did not have a teacher for her class for the first four weeks of school.  Thereafter, a teacher came in and taught for approximately two weeks and then left. I have personal knowledge of this because I sat in my daughter's classes. I tried to contact Principal Washington with respect to these problems; however, he never returned my calls.

After the first teacher left, Lanier High School hired a professor from New Orleans.  This teacher also did not last at Lanier High School for a long period of time.  Thereafter, a teacher named Ms. Boykin took over for the professor from New Orleans.  At the end of the year, my daughter was

required to turn in some papers for her class. When my daughter arrived at school, Ms. Boykin was not there to take the project. Therefore, my daughter gave it to Mr. Burkette and asked him to give it to Ms. Boykin because my daughter had to go to work. It is my understanding Mr. Burkette gave the project to Ms. Boykin as instructed.

The same day, Principal Washington called my daughter to the principal's office and informed her she had not turned in the papers. Tippany informed Principal Washington that she gave the papers to Coach Burkette who was supposed to give it to Ms. Boykin. Thereafter, Tippany called me to inform me of the problem. Therefore, I went down to Lanier High School to address the situation.

When I arrived to Sidney Lanier, I observed Principal Washington exiting the school with a police officer. I approached Principal Washington and inquired about the situation regarding my daughter. Principal Washington and I then went to his office, whereupon he called Ms. Boykin and Mr. Burkette to the principal's office. Principal Washington asked Ms. Boykin if Mr. Burkette had given her the papers, and Ms. Boykin confirmed that Mr. Burkette had indeed given her the project. Thereafter, Principal Washington asked Mr. Burkette, in a leading manner, whether Tippany had actually given him the papers. Mr. Burkette stated that my daughter did indeed give him the project. For some reason, Principal Washington did not appear to believe Mr. Burkette and in an abrupt and rude manner dismissed him from the office. I found this to be a very bizarre sequence of events.

Thereafter, Principal Washington told me not to pay any attention to Coach Burkette, as he was not going to be at Lanier much longer anyway. Frankly, I had no idea what he meant by this comment.

Further, the affiant sayeth not.

-2-

PAM KING

STATE OF ALABAMA
COUNTY OF MONTGOMERY

SWORN TO and SUBSCRIBED before me, this the _27th_ day of August, 2007.

NOTARY PUBLIC
My Commission Expires: _7/27/09_

-3-

## FEDERAL MEDIATION AND CONCILIATION SERVICE
## LABOR ARBITRATION

| | |
|---|---|
| In the Matter of Arbitration Between | ) |
| | ) |
| The Montgomery County Board of Education | )    FMCS Case No. 070710-3450-3 |
| | ) |
| and | ) |
| | ) |
| David Burkette | ) |

### AFFIDAVIT OF K.T. BROWN

BEFORE ME, the undersigned appeared and having been duly sworn in, testified as follows:

My name is K.T. Brown. I am over the age of nineteen (19) and currently reside at 625 Martha Street in Montgomery, Alabama. I am aware the Superintendent of the Montgomery County Board of Education has recommended to suspend Sidney Lanier High School teacher David Burkette for five days without pay. While I have no direct personal knowledge of the facts made the basis of the suspension, I do have first hand knowledge of information that may prove the suspension was made for personal or political reasons.

On or about May 11, 2007, I received a telephone call from David Burkette ("Burkette"). Burkette informed me that Lanier High School Principal Lewis Washington ("Washington") had called Burkette to Washington's office. According to Burkette, he was approached by Lanier High School Principal Jerone Torbert ("Torbert") and Lanier High School teacher Floyd Mathews ("Mathews"). They were accompanying him to Washington's office.

According to the suspension document, which I have read, Burkette allegedly made threatening remarks to Torbert and Mathews. In addition, the suspension document alleges that Burkette made profanity-laced statements regarding Washington while in the presence of Torbert

1

and Mathews. I can affirmatively state that Burkette did not use profanity while I was on the phone with him, nor did I hear Burkette make any remarks about Washington, Torbert or Mathews. In fact, I recall the events as follow.

On May 11, 2007, after school, I received a call from Burkette. Burkette said that as he was exiting the building to go to his car, there were two people standing there. The people were Torbert and Mathews. Burkette went on to his car and they told him that Washington wished to see him. Burkette said that he knew nothing of an appointment or anything that he had with Mr. Washington and asked what was going on. Burkette was told that Mr. Washington asked to see him.

As Washington and Torbert escorted Burkette to Washington's office, he was talking with me on the telephone and was telling me what happened and what Torbert and Mathews were doing. Burkette said, "I don't believe this." As Burkette was heading into Washington's office, I overheard Burkette say to Washington, "I understand that you need to see me". I did not hear clearly the answer that Washington gave and it was at the end of this conversation that I overheard because Burkette then hung up the phone. However, I do know for certain that Burkette did not at any time use any curse words or any unprofessional vulgar language that could be called or related to a curse word.

After the incident, I was scheduled to attend a conference with Mr. Jimmy Barker, Ms. Ann Sippial and Burkette. Burkette had asked me to accompany him to the Board for this conference. Therefore, I went to the Board at the request of Burkette. When I arrived, I was told to have a seat by the receptionist and she would let them know I was there. Thereafter, the receptionist went into the conference room, came back out, and told me that Mr. Barker was in a conference. I informed the receptionist that I was suppose to be a part of that conference. So, I assume the receptionist went

2

back into the conference room and informed them that I believed I was suppose to be a part of the conference. The receptionist then returned from the conference room and informed me to be seated. So, I went and sat down and thought about the fact that I was suppose to be a part of that conference because Burkette had notified Mr. Barker that he would be bringing me to participate in the conference.

Therefore, I got up and went back up to the receptionist and asked her why I was still sitting outside while the conference was taking place because I was suppose to be a part of the conference. The receptionist went back into the conference room to double check and find out for sure whether I was suppose to be a part of that conference. He told her no and asked me to be seated. So I waited until the end of the conference.

Thereafter, Mr. Barker came out and told me that he would need to see me and asked me to come into his office. I went into his office and he asked me a question on the incident that happened at Lanier pertaining to Mr. Burkette, Mr. Torbert, and Mr. Matthews. He asked me to tell him what was said generally and I told him everything that happened. I told Mr. Barker that at no time did I hear any profanity. Mr. Barker thanked me and I left.

Further, the affiant sayeth not.

K. T. BROWN

STATE OF ALABAMA
COUNTY OF MONTGOMERY

SWORN TO and SUBSCRIBED before me, this the 27TH day of August, 2007.

NOTARY PUBLIC
My Commission Expires: 7/27/09

3

# FEDERAL MEDIATION AND CONCILIATION SERVICE
# LABOR ARBITRATION

| | |
|---|---|
| In the Matter of Arbitration Between | ) |
| | ) |
| The Montgomery County Board of Education | ) |
| | )    FMCS Case No.  070710-3450-3 |
| and | ) |
| | ) |
| David Burkette | ) |

## AFFIDAVIT OF WANDA RUSSELL

BEFORE ME, the undersigned appeared and having been duly sworn in, testified as follows:

My name is Wanda Russell.  I am over the age of nineteen (19) years of age and currently reside at 4301 Woodley Square, Apartment 127 in Montgomery, Alabama.  I am aware the Superintendent of the Montgomery County Board of Education has recommended to suspend Sidney Lanier High School teacher David Burkette for five days without pay.  While I have no direct personal knowledge of the facts made the basis of the suspension, I do have first hand knowledge of information that may prove the suspension was made for personal or political reasons.

My daughter, Kaneshia Russell, was a junior at Sidney Lanier High School this past year. This year, we decided she needed to transfer to a different school called Southern Regional Christian Academy because I do not feel that Lanier is a safe environment for my daughter.  Moreover, I did not feel that she was getting an adequate education or that her teachers particularly cared for her education.  Mr. Lewis Washington was the principal at Lanier this past year and it is my understanding he has taken another position with the Montgomery County Board of Education.

This past year, I had a problem with one of my daughter's classes that was essentially left unresolved for the duration of the 2007 Spring semester. My daughter was scheduled to take driver's education with David Burkette. However, we were having financial issues and were initially unable

to pay for driver's education. As a result, Mr. Burkette was apparently given a deadline by Principal Washington for driver's education students to pay their fee. On the last day available to pay the fee, my daughter informed Principal Washington she had the fee for driver's education and asked if she could stay in the class. For some reason, Principal Washington informed my daughter that she could not stay in the class.

Thereafter, my daughter became an office aide in the principal's office. However, this apparently did not solve my daughter's scheduling issue because she was not taken off of the driver's education class roster. For some reason, Principal Washington informed Mr. Burkette to mark my daughter absent each day she was not in driver's education. My daughter informed me of this problem, which caused me to write Principal Washington to seek clarification while she was still enrolled in driver's education yet working as an office aide directly under Principal Washington. Therefore, I wrote a letter to express my concern and confusion as why my daughter was working in the office, yet being marked absent for missing driver's education when the office clearly had knowledge my daughter was working in the principal's office. (See attached February 13, 2007 letter).

On February 23, 2007, I received a response from Principal Washington. (See attached February 23, 2007 letter). His letter indicated it was the teacher's responsibility to report to the principal's office when a student has been removed from the class. Essentially, his letter tried to place the blame on Mr. Burkette. However, I do not understand how Principal Washington could place the blame on Mr. Burkette when he in fact knew my daughter began working as an office aide as early as January 11, 2007. He was the one who told my daughter she could no longer take driver's education and essentially moved her to the principal's office. Therefore, I believe that Principal

-2-

Washington is improperly placing the blame on Mr. Burkette with respect to this scheduling conflict.

Further, the affiant sayeth not.

**WANDA RUSSELL**

STATE OF ALABAMA
COUNTY OF MONTGOMERY

SWORN TO and SUBSCRIBED before me, this the _27th_ day of August, 2007.

NOTARY PUBLIC
My Commission Expires:_____

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 22, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

-3-

## FEDERAL MEDIATION AND CONCILIATION SERVICE
## LABOR ARBITRATION

| | |
|---|---|
| In the Matter of Arbitration Between )<br>)<br>The Montgomery County Board of Education )<br>)<br>and )<br>)<br>David Burkette ) | FMCS Case No. 070710-3450-3 |

### AFFIDAVIT OF KANESHIA RUSSELL

BEFORE ME, the undersigned appeared and having been duly sworn in, testified as follows:

My name is Kaneshia Russell. I am seventeen (17) years of age and currently reside at 4301 Woodley Square, Apartment 127 in Montgomery, Alabama. I am aware the Superintendent of the Montgomery County Board of Education has recommended to suspend Sidney Lanier High School teacher David Burkette for five days without pay. While I have no direct personal knowledge of the facts made the basis of the suspension, I do have first hand knowledge of information that may prove the suspension was made for personal or political reasons.

I attended Sidney Lanier High School this past year. Sidney Lanier High School is commonly referred to as Lanier High School. Last year, I was a junior at Lanier. This year, I have decided to transfer to another school called Southern Regional Christian Academy. The reason that I am transferring is because I do not feel Lanier is a safe environment. Moreover, the teachers at Lanier High School act like they do not care about the education of the students. Mr. Lewis Washington was the Principal at Lanier this past year. It is my understanding he has taken another job with the Montgomery County Board of Education.

It is also my understanding that one of the allegations against Mr. Burkette is that he made profanity laced statements directed at another teacher. Personally, I have never heard Coach Burkette



use inappropriate language. However, I can affirmatively state I have heard other teachers at Lanier curse on campus approximately three times a week. However, aside from Mr. Burkette, I am not aware that any other teacher have been disciplined for such conduct.

Further, I have heard Principal Washington make comments about Mr. Burkette which lead me to believe Principal Washington has some type of personal animus against Mr. Burkette. I began to notice Principal Washington's negative behavior towards Mr. Burkette when I served as an office aide during the Spring 2007 semester. Initially, I was not suppose to be an office aide this past semester. In fact, I was scheduled to take driver's education with Coach Burkette. However, I was initially having financial issues in order to pay the driver's education fee. As a result, Mr. Burkette was given a deadline by Principal Washington in which driver's education students could pay their fee. On the last day we were given the opportunity to pay the late fee, I went to the office and informed Principal Washington that I had the fee for driver's education and asked if I could stay in the class. He informed me that I could not stay in the class. I still do not understand why.

Thereafter, Principal Washington asked me to stay in the office while they straightened this scheduling matter out. In the meantime, I began to perform administrative and clerical duties in the office. Essentially, I was beginning to perform the duties of an office aide. I performed these duties for the remainder of the week. Hence, I asked Principal Washington and his secretary, Ms. Hart, if I was going to stay in the office and perform this work, could I be allowed to work as an office aide and receive credit. Thereafter, Ms. Markham, my academy principal for the school, was contacted and informed of this possibility. She stated that was fine. Therefore, I began working permanently as an office aide for the Spring 2007 semester. However, this did not solve my scheduling issue.

-2-

When I began working as an office aide, I fully expected for my schedule to be changed to reflect the transfer from driver's education to office aide. However, I was left on the driver's education schedule. In addition, Principal Washington informed Coach Burkette to mark me absent each day I was not at driver's education. This, of course, caused me great concern because Principal Washington informed me that I could not take driver's education, yet he placed me in the main office as an office aide. Still, he was insisting that Coach Burkette marked me absent for not attending driver's education. This became an issue to the point where my mother, Wanda Russell, had to get involved. She wrote Principal Washington and requested clarification why I was still enrolled in driver's education yet working as an office aide directly under the Principal. Essentially, neither me nor my mother understood why he would not switch my schedule when he knew I was working as an office aide. (See attached February 13, 2007 letter).

On February 23, 2007, Principal Washington responded to my mother's letter. (See attached February 23, 2007 letter). He stated my schedule should have been changed to reflect that I was no longer in driver's education. However, Principal Washington essentially blamed Coach Burkette for failing to notify the office of the apparent mix up. This made no sense for several reasons. First, Principal Washington refused to allow me to take driver's education. Second, I immediately began to work as an office aide in his office. Third, Principal Washington informed Coach Burkette to mark me absent for not going to class even Principal Washington was clearly aware I worked in the office. The entire incident was stressful to me and my mother, and Principal Washington's letter did nothing to alleviate that stress.[1]

---

[1] I actually watched Ms. Hart type the letter sent to my mother. I am not aware if Principal Washington actually dictated the letter; however, I know the signature on the actual letter is a block signature that was stamped onto the letter as opposed to actually signed by

While working as an office aide, I heard Principal Washington make several comments throughout the Spring that lead me to believe he had some personal animus towards Mr. Burkette. For example, in April 2007, I heard Mr. Washington ask Administrative Assistant Jerone Torbert to pull and review the last three weeks of security tape of Mr. Burkette and write down where Mr. Burkette went and the time that he went to those particular locations. Mr. Washington also told Mr. Torbert, "not to let up on his [Burkette's] ass!"

That same day, I saw Mr. Torbert was standing in the office and looking out the window. Apparently, he spotted Mr. Burkette, as he turned to Mr. Washington and stated, "Mr. Washington, your boy Burkette is pulling up in the parking lot." Mr. Washington told Mr. Torbert to get somebody to watch Coach Matthews' class and tell Coach Matthews and Mr. Henderson, "to follow that son of a bitch again." Mr. Washington also informed Mr. Torbert to tell Coach Matthews, "not to lose his [Burkette] ass this time." Thereafter, Coach Matthews came down to the office and Principal Washington told him to leave that moment and park in the Church's Fried Chicken Parking lot, "where that motherfucker [Burkette] could not see him." Principal Washington and Coach Matthews started laughing as Principal Washington told him not to "fuck up" this time. Principal Washington stated that if Coach Matthews did, Principal Washington would send Coach Burkette down to Coach Matthews' "B" team again.

On another occasion, Principal Washington told his secretary, Ms. Hart, to, "go and get Mr. Burkette's ass from his second floor classroom and tell him that I [Principal Washington] need to see him now!" Principal Washington also informed Ms. Hart that, "if Mr. Burkette refuses to come

---

Principal Washington.

-4-

down then I will get security to go up there and get his ass." Principal Washington then told Mr. Torbert to set the camcorder and have it facing from the left side of his [Principal Washington's] office. Principal Washington informed Mr. Torbert that he wanted Mr. Burkette to sit next to the door and have Mr. Torbert sit next to Mr. Burkette. Mr. Washington stated that hopefully Mr. Barker would be there in a minute. At that time, Ms. Hart returned to the office and stated she could not find Mr. Burkette. Mr. Washington then told Ms. Hart, "to get security to find that bastard."

On another occasion in April, I returned to the office to pick up my purse that I had left earlier in the day. I returned to the office with student Jermesha Langford, who was also an office aide. When I returned to the office, Mr. Washington saw me and asked to speak with me. I ran some errands for Ms. Hart before speaking with Principal Washington. When I returned I went into Principal Washington's office where Principal Washington and Mrs. Spicer were sitting. First, Principal Washington asked me about school. Thereafter, he asked if my mother got his letter.[2] I told Principal Washington my mother had received the letter. Principal Washington then stated, "oh yeah, I cleared up that mess that Coach Burkette created." At that point I left his office.

In addition, I recall an incident in the Spring 2007 semester when Mr. Burkette was apparently applying for a position in the physical education department. Mr. Burkette came into the office and handed Principal Washington his application for the position. After Mr. Burkette left, Principal Washington stated, "he [Burkette] must be out of his damn mind. I don't know why he would apply for a position that is not open anyway." Principal Washington then balled up the application and walked into his office.

---

[2] Principal Washington was referring to the February 23, 2007 letter I previously addressed in my affidavit.

Finally, last semester, Lanier High School teacher Belinda Bryant walked into the office and literally banged on Principal Washington's door. Mrs. Spicer opened the Principal's door and asked Ms. Bryant what she wanted. Ms. Bryant stated, "I need to see Mr. Washington and not you!" At that point in time, both women stood there staring at each other. Thereafter, Principal Washington appeared from his office and stood between the two women. Ms. Bryant then told Mrs. Spicer she needed to see Principal Washington alone. Principal Washington told Mrs. Spicer to step out of his office for a minute. Thereafter, Principal Washington then told Ms. Bryant to have a seat in his office. She stated, "no, I don't want to sit down I just want you to know that bitch, Ms. Cooper, cussed at my son this morning and I [Ms. Bryant] did not appreciate it worth a damn."

Principal Washington asked Ms. Bryant to calm down and put his arms around her. Ms. Bryant then told Principal Washington that if he did not do something about it she was, "going to go around there and slap the shit out of that bitch." Principal Washington then told Ms. Bryant that he would look into it. He asked Ms. Bryant to go back to her class and told Ms. Hart to, "call that stupid ass Cooper down here." Principal Washington then stated, "I'll be damned if I let her pull that same shit here like she did at Bellingrath." To my knowledge Ms. Bryant was not disciplined for using inappropriate language in the office. I certainly do not believe Principal Washington disciplined himself for using such language.

I am not personally aware where the friction between Coach Burkette and Principal Washington stems from. However, I do know there certainly appears to be some personal animus directed at Coach Burkette by Principal Washington. Personally, I believe Coach Burkette is a fine teacher who cares about the students he teaches. I do not understand why Principal Washington

made these comments about Coach Burkette. All I know is I heard them when I was working as an

office aide at Lanier High School.

    Further, the affiant sayeth not.


                        **KANESHIA RUSSELL**


STATE OF _ALABAMA_
COUNTY OF _MONTGOMERY_

    SWORN TO and SUBSCRIBED before me, this the __7th__ day of August, 2007.


              **NOTARY PUBLIC**

              NOTARY PUBLIC STATE OF ALABAMA AT LARGE
              MY COMMISSION EXPIRES: July 22, 2009
My Commission Expires: BONDED THRU NOTARY PUBLIC UNDERWRITERS

 

-7-

# FEDERAL MEDIATION AND CONCILIATION SERVICE
## LABOR ARBITRATION

In the Matter of Arbitration Between )
)
The Montgomery County Board of Education, )
)     FMCS Case No.070710-3450-3
and )
)
David Burkette )

## AFFIDAVIT OF ALVERENE BUTLER

====================================================================

BEFORE ME, the undersigned appeared and having been duly sworn in, testified as follows:

My name is Alverene Butler. I am over the age of nineteen (19) and currently reside at 3600 Farrar Street in Montgomery, Alabama. I am aware the Superintendent of the Montgomery County Board of Education has recommended to suspend Sidney Lanier High School teacher David Burkette for five days without pay. While I have no direct personal knowledge of the facts made the basis of the suspension, I do have first hand knowledge of information that may prove this suspension was made for personal or political reasons.

My son, Alvin Butler, attends Sidney Lanier High School, commonly referred to as Lanier High School. Mr. Lewis Washington is the Principal at Lanier High School. Ms. Kirsten Dial is currently a teacher at Lanier High School. She taught Alvin in the 11th and 12th grade.

It is my understanding that one of the charges alleged against Mr. Burkette is that he made profanity laced statements against another teacher at the school. I have direct knowledge that Ms. Dial has also made profanity laced statements. However, they were directed towards her students. Yet, it is my understanding that Ms. Dial has not been reprimanded for her actions. The following is the sequence of events regarding her use of inappropriate language.



This past year, I attended Parents Conference Day at Lanier High School. This essentially entails sitting in with your students while classes are taking place. I decided to sit in on Alvin's class with Ms. Dial. On that particular day, it appeared as though a substitute was filling in for Ms. Dial. As a result, the students in the class began to get out of their seats and converse with each other. However, just as class had begun, Ms. Dial came into the room, saw the students out of their desk, and exclaimed, "Ya'll know God-damn well I don't play this. Everybody get your ass's in your seats right now." Ms. Dial did not notice that I was in the room because I am short and tended to blend in with the other students. I noticed the substitute teacher did not flinch, which lead me to believe that cursing in Ms. Dial's class is a common occurrence.

When Ms. Dial turned around, she saw me. I was so stunned by Ms. Dial's comments to her students that I simply got up and left the room. Thereafter, I made a complaint to Mr. Washington on another incident where Ms. Dial used profanity towards my son. To my knowledge, nothing has happened as a result of my complaint.

The reason I had drafted this affidavit is because if Montgomery County Board of Education is going to punish Mr. Burkette for allegedly using profanity at another teacher, the rules should be applied to other teachers as well, especially when the profanity is directed towards the students. However, to my knowledge, Ms. Dial has not been disciplined for her actions.

Further, the affiant sayeth not.

_____
**ALVERENE BUTLER**

STATE OF _ALABAMA_
COUNTY OF _MONTGOMERY_

SWORN TO and SUBSCRIBED before me this the _3rd_ day of July, 2007.

_____
**NOTARY PUBLIC**
My Commission Expires: NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 22, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

# FEDERAL MEDIATION AND CONCILIATION SERVICE
## LABOR ARBITRATION

|  |  |  |
|---|---|---|
| In the Matter of Arbitration Between | ) | |
| | ) | |
| The Montgomery County Board of Education | ) | |
| | ) | FMCS Case No. 070710-3450-3 |
| and | ) | |
| | ) | |
| David Burkette | ) | |

## AFFIDAVIT OF GEORGETTE JOHNSON

BEFORE ME, the undersigned appeared and having been duly sworn in, testified as follows:

My name is Georgette Johnson. I am eighteen (18) years of age and currently reside at 1158 Freemont Drive in Montgomery, Alabama. I am aware the Superintendent of the Montgomery County Board of Education has recommended to suspend Sidney Lanier High School teacher David Burkette for five days without pay for allegedly making profanity-laced statements to a teacher named Mrs. Belinda Bryant in the presence of another co-worker on May 4, 2007. I have personal knowledge of the facts made the basis of the suspension because I was in Mrs. Bryant's class at the time this allegedly happened. I never heard Mr. Burkette use profanity towards Mrs. Bryant.

I am currently a junior at Sidney Lanier High School. Sidney Lanier High School is commonly referred to as Lanier High School. Mr. Lewis Washington was the Principal at Lanier this past year. I was a sophomore at Lanier last year, and took Computer Science with Mrs. Belinda Bryant. I sat in the near the front row.

With respect to the incident in question, Mr. Washington called me into his office and asked me questions about an incident that he said happened in Mrs. Bryant's room. First, Mr. Washington said to me, "Georgette, before you say anything, four of your classmates have already written statements to me and Mr. [Jerone] Torbert about Mr. Burkette using profanity laced remarks in front



of Mrs. Bryant's class. If you are caught lying to me by trying to protect Mr. Burkette, you will be suspended from school for the remainder of the year and will not be allowed to take your semester exams." Mr. Washington then pointed to a stack of office referrals that Mr. Torbert was holding in his hand.

Thereafter, Mr. Washington asked me what other cuss words did I hear Mr. Burkette say besides hell and bitch. I told Mr. Washington that the only thing I saw was Mrs. Bryant, Mr. Burkette and Mr. Cornell Nobles standing by the door talking and laughing. Mr. Washington then told me that was not what my classmates neither said nor wrote; they all said that I was with them when Mr. Burkette started cussing up a storm.

Mr. Washington then asked me to sign the bottom of a printout that he took off of his computer. I asked to read the print out, but Mr. Torbert said all it says was that I did not hear Mr. Burkette say those words. Nevertheless, I still asked to read it because it was about half of a page long. Since it was more than half a page long, I told Mr. Torbert the paper said more than what he just said. Mr. Washinton then told me to go back to class. I never got to read the paper, and I was not suspended as a result of this meeting.

Futher, the affiant sayeth not.

GEORGETTE JOHNSON

STATE OF _ALABAMA_

COUNTY OF _MONTGOMERY_

SWORN TO and SUBSCRIBED before me, this the _15th_ day of August, 2007.

NOTARY PUBLIC

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 22, 2009
My Commission Expires: BONDED THRU NOTARY PUBLIC UNDERWRITERS

-2-

# FEDERAL MEDIATION AND CONCILIATION SERVICE
## LABOR ARBITRATION

| | | |
|---|---|---|
| In the Matter of Arbitration Between | ) | |
| | ) | |
| The Montgomery County Board of Education | ) | |
| | ) | FMCS Case No. 070710-3450-3 |
| and | ) | |
| | ) | |
| David Burkette | ) | |

## AFFIDAVIT OF NANCY BELL

BEFORE ME, the undersigned appeared and having been duly sworn in, testified as follows:

My name is Nancy Bell. I am nineteen (19) years of age and reside at 428 Bainbridge Street in Montgomery, Alabama. I am aware the Superintendent of the Montgomery County Board of Education has recommended to suspend Sidney Lanier High School teacher David Burkette for five days without pay. While I have no direct personal knowledge of the facts made the basis of the suspension, I do have first hand knowledge of information that may prove the suspension was made for personal or political reasons.

I attended Sidney Lanier High School this past year. Sidney Lanier High School is commonly referred to as Lanier High School. Last year, Mr. Lewis Washington was the principal at Lanier High School. I understand that Mr. Washington is no longer the principal at Lanier High School. Mr. Jerone Torbert served as assistant principal this past year. Ms. Belinda Bryant was my computer science teacher.

On or about Friday, May 4, 2007, Mr. Burkette entered Ms. Bryant's class. I was sitting in the front row of Ms. Bryant's class when he entered the classroom. While in the classroom, Mr. Burkette appeared to be having a conversation with Ms. Bryant. I do not know what was said between Mr. Burkette and Ms. Bryant. Mr. Burkette was talking to Ms. Bryant in a normal voice.

It

He was not being disruptive or loud. In addition, he did not appear angry or frustrated. In my opinion, he appeared to be acting in a professional manner while speaking with Ms. Bryant. As a result, I did not pay much attention to their conversation or the fact that Mr. Burkette was in Ms. Bryant's room.

On or about Wednesday, May 9, 2007, Ms. Everage made an "all-call" on the school intercom system for me to come to the office. However, I was not at school on that day. I returned to school on Thursday, May 10, 2007. That morning, while I was congregating outside the school building, Carlton Sanders, a friend of mine at Lanier High School, told me I had been called to the office over the intercom. Thereafter, Ms. Inez Everage, a Lanier school administrator, approached me while I was still outside the school and told me that Mr. Torbert wanted to see me. Mr. Torbert is an Assistant Principal at Lanier High School. I told her "alright." At that time, I started to walk into the building to go to first period and Mr. Torbert was standing at the door. Mr. Torbert approached me as I was coming inside and informed me that he needed to see me in his office. I went with Mr. Torbert to the office.

When we arrived to his office, Mr. Torbert stated that he knew I had first hand knowledge of a conversation between Mr. Burkette and Ms. Bryant about the need to stop rumors that Mr. Burkette and Ms. Bryant were having a relationship. Mr. Torbert told me he needed a statement from me so he could get rid of Mr. Burkette. I told Mr. Torbert I did not know what he was talking about and thus could not give him a statement. Mr. Torbert informed me he knew I was aware of something, and if I did not come clean he was going to give me a five day suspension. Again, I informed Mr. Torbert I did not know what he was talking about, Mr. Torbert then dismissed me from his office.

I was not called back into the office again.   Further, I was never informed whether I was suspended as a result of failing to give a statement.  I was never aware of any rumors regarding Coach Burkette and Ms. Bryant.  In fact, the first time I became aware of the alleged rumors was when Mr. Torbert called me into his office and asked for a statement.  Again, I was not aware of the specifics of the conversation held between Mr. Burkette and Ms. Bryant.  All I recall is that Mr. Burkette entered Ms. Bryant's room and had a discussion with her.  He never raised his voice to a level that I could hear.  Again, I was sitting in the front of the class.

Further, the affiant sayeth not.

**NANCY BELL**

STATE OF _Alabama_
COUNTY OF _Montgomery_

SWORN TO and SUBSCRIBED before me, this the _23rd_ day of August, 2007.

NOTARY PUBLIC
My Commission Expires: _____

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 22, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

-3-

## FEDERAL MEDIATION AND CONCILIATION SERVICE
## LABOR ARBITRATION

| | |
|---|---|
| In the Matter of Arbitration Between ) | |
| ) | |
| The Montgomery County Board of Education, ) | |
| ) | FMCS Case No. 070710-3450-3 |
| and ) | |
| ) | |
| David Burkette ) | |

## AFFIDAVIT OF ALVIN BUTLER

===============================================================================

BEFORE ME, the undersigned appeared and having been duly sworn in, testified as follows:

My name is Alvin Dixon. I am nineteen (19) years of age and currently reside at 3600 Farrar

Street in Montgomery, Alabama. I am aware the Superintendent of the Montgomery County Board

of Education has recommended to suspend Sidney Lanier High School teacher David Burkette for

five days without pay. While I have no direct personal knowledge of the facts made the basis of the

suspension, I do have first hand knowledge of information that may prove this suspension was made

for personal or political reasons.

I recently attended Sidney Lanier High School, commonly referred to as Lanier High School.

Mr. Lewis Washington is the principal at Lanier High School. It is my understanding that one of the

allegations against Mr. Burkette is that he made a profanity laced statement that was directed at

another teacher. I can affirmatively state that multiple teachers curse on campus, to each other as

well as the students. However, aside from Mr. Burkette, I am not aware that any other teacher has

been disciplined for such conduct.

For example, one day this past year I had permission to put up flyers for a performance I was

going to give. I had class with Ms. Kirsten Dial, a teacher at Lanier High School during the period

that I was putting up flyers. It is my understanding that she asked the class where I was and what

$\mathcal{I}$

I was doing during that time. When several students responded that I was putting up flyers for my performance, she responded "he need to have his ass in class." I was told by five of my classmates she made this statement. Unfortunately, all of them are fearful to come forward and submit an affidavit as they are wary of any potential retaliation.

In addition, I have heard Principal Washington curse as well. I was participating in a talent show, and several teachers, including Ms. Tolliver, a math teacher, were attempting to stifle my performance in the show and were making negative comments about me. One of the teachers was Ms. Dial. Thereafter, I went to the principal's office and informed him of the issues I was facing. In response to my concerns, the principal stated, "is she staying on your ass." He was referring to Ms. Tolliver. His language did not concern me because it has essentially become every day language with all of our teachers in all of our classes.

In essence, the purpose of this affidavit is to show that many teachers at Lanier High School curse. However, Mr. Burkette is the only teacher that I am aware of that has received discipline as a result of such conduct. Therefore, I do not believe that the rules are being applied uniformly across the board with respect to the teachers at our school.

Further, the affiant sayeth not.

ALVIN BUTLER

STATE OF _ALABAMA_
COUNTY OF _MONTGOMERY_

SWORN TO and SUBSCRIBED before me, this the _3rd_ day of July, 2007.

NOTARY PUBLIC
My Commission Expires: NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 22, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

## FEDERAL MEDIATION AND CONCILIATION SERVICE
### LABOR ARBITRATION

| | |
|---|---|
| In the Matter of Arbitration Between | ) |
| | ) |
| The Montgomery County Board of Education, | ) |
| | )   FMCS Case No. |
| and | ) |
| | ) |
| David Burkette | ) |

## AFFIDAVIT OF TERRY TALLIE

==================================================================

**BEFORE ME**, the undersigned appeared and having been duly sworn in testified as follows:

My name is Terry Tallie. I am sixteen (16) years of age and reside at 3004 Susan Drive in Montgomery, Alabama. I am aware the Superintendent of the Montgomery County Board of Education has recommended to suspend Sidney Lanier High School teacher David Burkette for five days without pay. While I have no direct personal knowledge of the facts made the basis of the suspension, I do have first hand knowledge of information that may show this suspension was made for personal or political reasons.

I am an upcoming junior at Sidney Lanier High School in Montgomery, Alabama. Sidney Lanier High School is commonly referred to as Lanier High School. I took driver's education during second period in the Spring Semester, 2007. Coach David Burkette taught the second period driver's education class.

In order to take driver's education, students are required to pay a fee. However, I never paid for the class. This was because I was instructed by Principal Lewis Washington that I was not required to pay for the class. During the spring semester, my grandfather accompanied me to the main office in order to sign me into school because I was late on that particular day. Principal Washington saw my grandfather and me in the main office and ushered us into his office. At that

point in time, he initiated a conversation regarding the driver's education class and told us that we did not have to pay for the class. Principal Washington informed us that he would take care of it.

As a result, I continued to go to driver's education and did not bring in the fee for the class. Each day, Mr. Burkette asked me if I had brought my money for the class. Each day I told Mr. Burkette that Principal Washington said he would take care of the class. However, Coach Burkette apparently never received any notification from Principal Washington that I was not required to pay for the class. Each day, I would go to the office to determine whether I needed to pay for the course. However, Principal Washington was always in a meeting or unavailable.

Finally, I was able to catch Principal Washington in the office this past semester. I informed Principal Washington that I was there to see what he had done regarding my situation with the driver's education class. At that point, Principal Washington stated, "why did Burkette send your damn ass to this damn office." Again, I repeated that my fee for driver's education had not yet been paid, and I needed to check on it. Principal Washington then responded, "you don't have to pay him [Burkette] one damn dime." The conversation ended at that point, as Principal Washington entered his office and shut the door. Thereafter, Principal Washington sent Coach Burkette a note regarding my fee for driver's education. I assumed my fee was paid for, as I received a grade in the class.

Aside from the situation regarding my fee for the class, I noticed behavior by Principal Washington that appeared to be intentional in his efforts to antagonize Coach Burkette. Specifically, Principal Washington would enter our driver's education class on a daily basis, walk around the classroom, and then leave. He never performed this act in any of my other classes. He only did this in my class with Coach Burkette. Coach Burkette never reacted to these "walk-throughs." He just continued to teach the class.

-2-

I am aware that there is friction within their relationship. While I do not know the root of the friction, I believe that Principal Washington's actions were related to that friction. As such, I found Principal Washington's actions peculiar, suspicious and disruptive.

Finally, I never heard Coach Burkette use inappropriate or foul language while I was in his presence. He always handled himself in a professional manner. I enjoyed having class with Coach Burkette.

Further, the affiant sayeth not.

_Terry Tallie_
TERRY TALLIE

STATE OF ALABAMA
COUNTY OF Montgomery

SWORN TO and SUBSCRIBED before me, this the _5th_ day of ~~July~~ Sept, 2007.

_Debra L. Taylor_
NOTARY PUBLIC    NOTARY PUBLIC STATE OF ALABAMA AT LARGE
My Commission Expires:    MY COMMISSION EXPIRES: July 22, 2009
    BONDED THRU NOTARY PUBLIC UNDERWRITERS

## AFFIDAVIT OF VALERIE BROWN-JONES

==================================================================

BEFORE ME, the undersigned appeared and having been duly sworn in, testified as follows:

My name is Valerie Brown-Jones.  I am over the age of nineteen (19) and currently reside at 3451 Manchester Drive in Montgomery, Alabama.  I am aware the Superintendent of the Montgomery County Board of Education has recommended to suspend Sidney Lanier coach and teacher David Burkette for five days without pay.  While I have no direct personal knowledge of the facts made the basis of the suspension, I do have first hand knowledge of information that may prove this suspension was made for personal or political reasons.

My daughter and son attend Sidney Lanier High School, commonly referred to as Lanier High School.  Mr. Lewis Washington is the principal at Lanier High School.  L.C. Cole is the head football coach as well as the Athletic Director at Lanier.  As athletic director, Mr. Cole is the immediate supervisor to the coaches in every sport.  Currently, my daughter is on the cheerleading squad at Lanier High School.

On or about May 25, 2007, I visited Lanier's administrative office in order to speak to Principal Washington as well as Coach Cole.  I had a concern regarding my daughter that needed to be addressed with Principal Washington and Coach Cole.  When I entered the office, Principal Washington was apparently meeting with entire Lanier coaching staff.  Mr. Burkette was not in the meeting.  The door was open as the meeting took place.  When the meeting concluded, all of the coaches left, with the exception of Coach Cole.  The door remained open at that time.  Thereafter, I heard Principal Washington exclaim, "I can't stand Burkette's ass, I want to get that motherfucker out of here."

*K*

At that point in time, I decided to enter the Principal's office and see if I could meet with the principal and Coach Cole. I entered the office and asked to speak with the principal and Coach Cole since they were both present. Principal Washington exclaimed that he had to get the pink slips out before 10:00 A.M. and thus could not meet. He asked if I could return. I exclaimed that I could not return and would like to meet then. Principal Washington then acquiesced and asked me to wait outside for a few minute. I did so. The door to Principal Washington's office remained open.

When sitting outside, I then heard Coach Cole say, "yeah, I am tired of that motherfucker to," whereupon Principal Washington stated, "he's got to go, he's got to go, he's got to get his ass out this year." I assume they were still speaking about Mr. Burkette. Thereafter, I held my meeting with Principal Washington and Coach Cole.

Further, the affiant sayeth not.

**VALERIE BROWN-JONES**

STATE OF _ALABAMA_
COUNTY OF _MONTGOMERY_

SWORN TO and SUBSCRIBED before me, this the _29_ day of April, 2008.

**NOTARY PUBLIC**
My Commission Expires: _Feb. 22, 2009_

-2-

My Name is Kenneth Smith

During football season in 2006, some football players were called down to the office and were asked did Coach Burkette question about Jeremy Hall being inelgible for football. Mr. Washington then told us that the reason Coach Burkette didn't get the job was because he had a lawsuit against the board of education. Mr. Washington told us on 4 different times that he was going to fire Coach Burkette.

I am 19 years old. In 2006, I was a student at Lanier. I declare Affirm or swear. That the above is true.

Done this 8/14/08

Kenneth F. Smith

L

Aug-15-2008

My Name is Richard L. Wilson, In october 2006, Several of Lanier football Players were called down to the office by the Principal, Mr. Washington. He asked us did Coach Burkett question us about any ineligible player of our football team. In which we said "No" But he continued telling us he was going to fire coach Burkett.

Mr. Washington stated to us numerous of times that coach Burkett had an lawsuit agcist the board and he is out for money and not for us. Mr. Washington words to us was that the board will not let him hire Coach Burkett.

I Declare Affirm, or swear That the Above is True

Date 8/15/2008.

Richard L. Wilson

M

# Affidavit of Shelby Meadows

As the booster Club President for Lanier High School, I served on the selection committee to select a new coach and athletic director. Mr. Lewis Washington informed me not to select David Burkette because he has a lawsuit pending against the school board and that he was instructed not to consider him for either position.

I am over 19 years old. In 2006, I was the booster club president at Lanier.
I declare, affirm, or swear that the above is true.

Done this 15th day of august 2008.

Shelby Meadows

294-6431


N

August 8, 2008

To Whom It May Concern:
I, Valerie Brown have had many
conversations with Mr. Lewis
Washington, regarding Whom would
be hopers next athletic director,
head football coach and I was
was calling out names when
Mr. David Burkette name came up
Mr. Washington said he would not
hire and also he was instructed
no to hire him (Mr. David Burkette)
from the Board of Education because
Mr. David Burkette has sued
Montgomery Public School System to
many times.

Valerie Brown
Valerie Brown

I am over 19 years old. In 2006,
(I declare) affirm, or swear that
the above is true.
Done this 8th day of August 2008

