IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID MICHAEL BURKETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 2:07-cv-1121-WKW |
| MONTGOMERY COUNTY BOARD | ) | [wo] |
| OF EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 9, filed January 29, 2008). Pending before the Court are Defendants' *Motion for Summary Judgment* and supporting documentation (Docs. 16-17, filed July 18, 2008). For good cause, it is the recommendation of the Magistrate Judge the Motion for Summary Judgment be GRANTED in part and DENIED in part as set forth below.

### I. PARTIES

*Pro se* plaintiff, David Michael Burkette ("Burkette" or "Plaintiff") is a resides in Montgomery, Alabama which is in the Middle District of Alabama.

Defendant Montgomery County Board of Education. ("MCBOE") is the legal entity charged with the general administration and supervision of public schools in Montgomery

County.  Defendant Lewis Washington ("Washington") was the Principal of Lanier High School from 1999 to 2007 and has been sued in his individual capacity.  Collectively, MCBOE and Washington shall be referred to as "Defendants."

## II.   JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights), 42 U.S.C. § 2000e-5 (Title VII), and 42 U.S.C. § 1983 (Civil Rights Act of 1871, as amended).  The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## III.   NATURE OF THE CASE & MOTION FOR SUMMARY JUDGMENT

The underlying facts of this case are necessarily viewed in favor of the nonmovant *pro se* Plaintiff.  Burkette initiated this action on December 26, 2007.  *See* Doc. 1.  In his complaint, Burkette asserts claims pursuant to Title VII and 42 U.S.C. § 1983.  *Id*.  Burkette specifically alleges the Defendants did not hire him for certain positions due to his race (African American) and in retaliation for his prior EEOC complaints and the resulting litigation.

The complaint provides minimal details as to the factual basis of his claims.  Burkette, a black male, asserts claims related to the failure to hire him for certain other positions in the school district.  Specifically he was not hired as the Athletic Director/Head Football Coach or the Assistant Football Coach at Lanier High School.  .  *Id*. at ¶¶ 8-10.  He avers he was not

hired because of his race and because in the past he had filed other discrimination charges against the MCBOE.

On July 17, 2008, Defendants submitted their Motion for Summary Judgment and supporting documentation. *See* Docs. 16-17.  In the motion, Defendants assert all the claims should be dismissed as there are no material facts at issue because Burkette's claims are not only administratively barred, but also fail to establish his prima facie cases for his respective claims under Title VII and § 1983.

Burkette filed his response on August 15, 2008 - one week after the Court's deadline. *See* Doc. 20.  Burkette's response included the "Declaration of David Burkette" as well as fourteen affidavits from various individuals.  On August 20, 2008, Defendants filed their motion to strike the response.  *See* Doc. 21.  The Court held a telephonic hearing on the matter on September 24, 2008.  Burkette explained that he misunderstood the deadline as he believed the "reply" deadline was the one he needed to follow.  Further, he stated he misunderstood some comments by defense counsel wherein he still concluded that August 15, 2008 was his deadline to response to the motion for summary judgment.  Because the response was only 5 business days late, the Court permitted Burkette to file his response and denied Defendants' motion to strike.  The Court also allowed Defendants to file a reply to the response.

In their reply, Defendants state the submitted documents "contain extensive hearsay, speculation and conjecture and are each, at least in part, due to be stricken from

consideration." *See* Doc. 29 at p. 2. Defendants also state "to the extent the submitted documents contain material not based on personal knowledge, the same are similarly due to be stricken." *Id*. However, Defendants do not state with any specificity which portions of the extensive affidavits they wish stricken. Thus, the Court will not strike any of the submitted affidavits or declaration, but will construe the requests to strike as additional argument in reply to Plaintiff's response. Further, the Court will consider only evidence that is admissible on its face or can be reduced to admissible form and that complies with Federal Rule of Civil Procedure 56(e). *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Macuba v. DeBoer*, 193 F.3d 1316, 1322-24 (11th Cir. 1999).

## IV. SUMMARY JUDGEMENT STANDARD

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322-24, 106 S.Ct. at 2552-54; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249.

Only disputes about the material facts will preclude the granting of summary judgment. *Id.* A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1277 (11th Cir. 2005) (quoting *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344-45 (11th Cir. 2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'"). Thus, the initial burden of proof rests on the movant. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554; *Gonzalez*, 161 F.3d at 1294. This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the non-movant from carrying its burden of proof. *Celotex*, 477 U.S. at 322-23; 106 S.Ct. at 2552-53. The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the

motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (conclusory assertions in absence of supporting evidence are insufficient to withstand summary judgment). The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and my not rest upon the mere allegations or denials of the pleadings. FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted). Thus, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586 106 S.Ct. at 1356 (citations omitted).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Johnson*, 263 F.3d at 1242-43. Further, "all justifiable inferences are to be drawn in [that party's] favor." *Anderson*, 477 U.S. at 255; 106 S.Ct. at 2513; *see also McCormick*, 333 F.3d at 1243 (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). If the non-moving party fails to make a showing sufficient to establish the existence of an

element essential to its case on which it will bear the burden of proof at trial, summary judgment <u>must</u> be granted. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. In other words, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Id*. at 322, 106 S.Ct. at 2552.

In addition, all litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure. Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

## V.  DISCUSSION AND ANALYSIS

### A.    Section 1983 claims

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979)). It is well established that an allegation of a Title VII violation cannot provide the sole basis for a § 1983 claim. *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998) (citations omitted). A plaintiff may bring a § 1983 claim for a violation of Fourteenth Amendment right to equal protection. *See id*. (citing *Johnson v. City of Fort Lauderdale*, 114 F.3d 1089, 1092 (11th Cir. 1997) (Title

VII does not preempt a Fourteenth Amendment cause of action for employment discrimination under § 1983)). However, Burkette makes no reference to the Fourteenth Amendment in his Complaint and thus the Court must conclude Burkette rests his § 1983 claim solely on his Title VII claims. *See* Doc. 1 generally. As such, summary judgment must be granted as to the § 1983 claims.

**B.    Statute of Limitations as to Athletic Director Position**

Title VII provides certain prerequisites that must be satisfied before a plaintiff can file a civil action under Title VII. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002) (citing *Burkette v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). Specifically, "[a] charge . . . shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-(5)(e)(1); *see also Pijnenburg v. West Ga. Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001) ("It is settled law that in order to obtain judicial consideration of such a claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred."). Thus, if a plaintiff fails to file an EEOC charge before the 180 day limitations period, the subsequent suit is time barred.

The determination of whether a plaintiff has filed a timely EEOC charge depends on when the alleged unlawful employment practice occurred. *Thomas v. Alabama Council on Human Relations, Inc.*, 248 F.Supp.2d 1105, 1115 (M.D. Ala. 2003). In cases involving

discrete retaliatory or discriminatory acts such as termination, failure to promote, denial of transfer, or refusal to hire, the act occurs on the day that it happens. *Morgan*, 536 U.S. at 110, 122 S.Ct. at 2070. Therefore, a party must file a charge within 180 days of the date of the act or lose the ability to recover for it. *Id.*, 122 S.Ct. at 2071. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114, 122 S.Ct. at 2073. As such, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113, 122 S.Ct. at 2072.

Burkette alleges discrimination and retaliation under Title VII with regard to the Athletic Director Position for which he was not hired in June 2006. *See* Doc. 1 at ¶ 10. L.C. Cole, the person hired in the position, was hired on June 20, 2006. *See* Doc. 16, Exhibit 3, "6/20/06 Personnel Action Report." Thus, any EEOC charge stemming from this action must be filed within 180 days of June 20, 2006. Burkette did not file his EEOC charge of discrimination until January 5, 2007. *See* Doc. 16, Exhibit 5. As such, Burkette filed his EEOC charge beyond 180 days as to the Athletic Director position, and thus his Title VII claims are untimely.

**C.    Failure to Exhaust as to Assistant Football Coach Position**

Burkette alleges in his Complaint Title VII claims of discrimination and retaliation as the basis for his non-selection for the Assistant Football Coach position in August or September 2006. *See* Doc. 1 at ¶ 8-9. Defendants state these claims are barred because they

were not alleged in the EEOC charge of discrimination.  *See* Doc. 17 at p. 10.  Defendants

attach the EEOC Charge and Affidavit as Exhibit 5 to their Motion for Summary Judgment.

*See* Doc. 16, Exhibit 5.

"The starting point for determining the permissible scope of the judicial complaint is

the EEOC charge and investigation."  *Houston v. Army Fleet Servs., L.L.C.*, 509 F.Supp.2d

1033, 1042 (M.D. Ala. 2007) (quoting *Evans v. U.S. Pipe & Foundry, Co.*, 696 F.2d 925, 929

(11th Cir. 1983)).  The factual statement contained in the charge of discrimination is where

the Court should look as to what was alleged.  *See Sanchez v. Standard Brands, Inc.*, 431

F.2d 455, 466 (5th Cir. 1970)[1] (The "crucial element of a charge of discrimination is the

factual statement contained therein.").  "[A] charging party's failure to check the appropriate

box on the EEOC charge of discrimination form indicating what he believes to be the basis

for the discrimination (i.e. race, color, sex, disability, retaliation, national origin, age, or

religion) does not bar the plaintiff from litigating a claim so long as the factual allegations

in the EEOC charge are sufficient.  *Houston*, 509 F.Supp.2d at 1042 (citing *Sanchez*, 431

F.2d at 462-63); *see also Gregory v. Georgia Dep't of Human Resources*, 355 F.3d 1277,

1280 (11th Cir. 2004) (EEOC charge prepared without assistance of counsel should be

construed liberally and failure to check a box on the template form does not preclude a

claim).  Thus, the fact Burkette did not check the "race" box on the front of the charge of

---

[1]      *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*)
(adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior
to the close of business on September 30, 1981).

discrimination form does not preclude him from litigating the claim as long as the race discrimination claim is contained in the factual allegations detailed in the charge.  *See* Doc. 16, Exhibit 5.  Thus, the Court looks to the affidavit attached to the Charge of Discrimination.  *Id*.

The Court's review of the affidavit shows the Assistant Football Coach position was alleged in the underlying EEOC.  Specifically, on page 10 of the affidavit[2] Burkette states "[o]n August 22, 2006, a teacher and coach hired by Principal Washington was terminated because of an unfavorable criminal background.  The employee had the assignment of assistant football and head junior varsity basketball coach" and "[o]n August 26, 2006, this 'terminated' coach coached in a football contest at Wilcox Central after being removed from the classroom on 8/23/06."  *See* Doc. 16, Exhibit 5.  Later on page 15 Burkette states "[o]n September 12, 2006, Washington hired an assistant coach to replace the dismissed coach (8/26/08).  However, this newly hired coach was the same coach who was dismissed by formal [sic] athletic director, Richard Moncrief for abusing a football player. (August 2005)." Thus, the Court is satisfied that the assistant football coach position was referenced in the EEOC charge.

Next, the Court must discern whether Defendants have established for summary judgment purposes that there was no reference to race discrimination and retaliation in relation to the assistant football coach position.  Burkette clearly states he has filed multiple

---

[2]        The page numbers the Court uses are those in the original affidavit drafted by Burkette provided at the bottom of the page.

EEOC complaints and EEOC lawsuits against the MCBOE due to "their continued retaliatory and discriminatory actions against me." *See* Doc. 16, Exhibit 5 Affidavit at p. 1.  With regard to the retaliation claim, the substance of the EEOC charge, including the check mark on the front of the cover page, firmly establishes Burkette asserts a clear charge of retaliation as to the Assistant Football Coach position. Consequently, Defendants fail to successfully raise a procedural bar to the Assistant Football Coach retaliation allegation.

The assertion of a race discrimination claim is not as clear.  However, as noted in the summary judgment standard section, the court must view all the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in favor of the nonmovant. Exhibit 5 to Defendants' motion for summary judgment - the EEOC charge and affidavit - abruptly stops at page 20 of the affidavit and from the content of the affidavit it would appear the EEOC charge attached to the motion for summary judgment is incomplete.[3] Consequently, based on the general allegations referenced on page one and fact Defendants apparently did not attach the entire affidavit to the EEOC charge of discrimination, Defendants fail to establish for summary judgment purposes that the allegations of discrimination as to the Assistant Football Coach are procedurally barred.  Thus, the Court looks to the merits of the allegations relating to the Assistant Football Coach.

---

[3]      The Court acknowledges the possibility that Burkette's EEOC affidavit may end on an incomplete sentence, but notes it is merely a possibility.  Thus, since Burkette is the nonmovant, all reasonable inferences must be in his favor.  In this instance, the reasonable inference is that the affidavit attached by Defendants is incomplete.

**D.     Claims against Washington**

Washington asserts he cannot be held liable in his individual capacity as individual capacity lawsuits are disallowed under Title VII.  *See* Doc. 17 at p. 9.  In the Eleventh Circuit, a plaintiff may not bring a Title VII claim against an employer's agent in his individual capacity.  *See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (no individual responsibility under Title VII); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("The relief granted under Title VII is against the *employer*, not the individual employees whose actions would constitute a violation of the Act.") (emphasis in original); *see also Cross v. Alabama Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995) (affirming the *Busby* holding after the 1991 amendments to Title VII and holding liability under Title VII is limited to official-capacity actions).  Therefore, Burkett's claims against the Washington in his individual capacity warrant dismissal as a matter of law.

A plaintiff may bring a Title VII suit against an individual in his official capacity.  *See Cross*, 49 F.3d at 1504.  However, when a plaintiff names both the employer and the individual supervisor in his official capacity, the supervisor may be dismissed from the action.  *See Taylor v. Alabama*, 95 F.Supp.2d 1297, 1309 (M.D. Ala. 2000) (citing *Cross*, 49 F.3d at 1504) (where a Title VII plaintiff names the employer as a defendant, any of the employer's supervisory officials also named in the complaint may be dismissed from the action); *see also Moss v. W & A Cleaners*, 111 F.Supp.2d 1181, 1187 (M.D. Ala. 2000) ("If

a Title VII plaintiff names his or her employer as a defendant, any of the employer's agents also named in the complaint may be dismissed from the action."). As Burkette brings his Title VII claim against the MCBOE, the Title VII complaints against Washington in his official capacity are redundant and therefore due dismissal.

**E.     Title VII claims against MCBOE as to Assistant Football Coach Position**

Burkette raises two claims under Title VII because he was not being hired as the Assistant Football Coach.[4] His primary claim focuses on alleged retaliation by the MCBOE for his prior EEOC claims and litigation. His second claim focuses on perceived racial discrimination, but it is unclear whether Burkette alleges a failure to promote or a failure to hire claim. Regardless, failure to promote and failure to hire claims are analyzed under similar legal standards thus the Court will address both.

**i.     Race Discrimination**

Under Title VII, it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Burkette asserts a disparate treatment claim based on his race in violation of Title VII. *See* Doc. 1 at ¶¶ 11-15. "A claim of disparate treatment alleges that an individual employee received less favorable treatment due to the employee's race, color, sex, religion,

---

[4]      As previously discussed, the Athletic Director position is barred as untimely, thus the Court will not discuss those allegations further.

or national origin." *Wright v. Dep't of Corrections*, 31 F.Supp.2d 1336, 1342 (M.D. Ala. 1998); *accord Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).  With regard to disparate treatment claims under Title VII, a plaintiff must prove that the defendant acted with discriminatory purpose. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002) (citation omitted). Specifically, a plaintiff must present either (1) statistical proof of a pattern of discrimination, (2) direct evidence of discrimination, which consists of evidence which, if believed, would prove the existence of discrimination without inference or presumption, or (3) circumstantial evidence of discriminatory intent using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973).  *See Holifield*, 115 F.3d at 1561-62; *Wright*, 31 F.Supp.2d at 1342.  In the case at hand, there is no indication of statistic proof of a pattern of discrimination.  Next, Burkette does make conclusory remarks that he was told the assistant coach position was specifically meant for a white person, but he presents no admissible evidence of direct evidence of discrimination. *See* Doc. 1 at ¶ 9.  "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations and citations omitted).  "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Id*. (citations omitted). As a result, this circumstantial evidence case proceeds under the burden-shifting framework

of *McDonnell Douglas* and its progeny.

First, under *McDonnell Douglas*, a plaintiff must create an inference of discrimination by establishing a prima facie case. *Williams*, 303 F.3d at 1293. Next, should the plaintiff establish a prima facie case, the burden shifts to the defendant to present legitimate, nondiscriminatory reasons for the employment action. *Holifield*, 115 F.3d at 1564. Although the establishment of a prima facie case shifts the burden of production to the defendant, it does not reallocate the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747,125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct.1089, 1093, 67 L.Ed.2d 207 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.")). Once defendant has presented a legitimate, nondiscriminatory reason for its action, the burden shifts back to the plaintiff to produce "sufficient evidence to find that the employer's asserted justification is false" and in reality, a pretext for unlawful intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000). In other words, at the summary judgment stage, the plaintiff may survive by providing a prima facie case and evidence sufficient for a jury to find that the employer's proffered explanation is false. *Reeves*, 530 U.S. at 147-48, 120 S.Ct. at 2108-09.

For a failure to promote claim, under the *McDonnell Douglas* analysis, Burkette must first establish a prima facie case by showing: (1) he was a member of a protected class; (2)

he was qualified for and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (citing *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000)). For a failure to hire claim, the elements are substantially the same: (1) he was a member of a protected class; (2) he applied and was qualified for a position for which the defendant was accepting applications; (3) despite his qualifications, he was not hired; and (4) after his rejection the position remained open or was filled by a person outside his protected class. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999) (citing *Welborn v. Reynolds Metals Co.*, 810 F.2d 1026, 1028 (11th Cir. 1987)); *see also Godoy v. Habersham County*, 211 Fed. Appx. 850, 853 (11th Cir. 2006) (unpublished) (citing prima facie elements from *Schoenfeld*). The burden to establish a prima facie case is not intended to be "onerous," but requires only that the plaintiff establish adequate facts to permit an inference of discrimination. *Holifield*, 115 F.3d at 1562 (citations omitted).

It is undisputed that Burkette's race is protected under Title VII and that he was not selected for the Assistant Football Coach position. Further, Defendants do not claim that Burkette was unqualified for the position. Thus, elements one, two, and three are satisfied and only element four is in dispute.

As to element four, Burkette must show the position either remained open or the selection of someone outside the protected class. Again, the establishment of a prima facie

case is not meant to be an onerous burden.  *See Holifield*, 115 F.3d at 1562.  Burkette avers

Lester Henderson, a white male, was selected for the position.  Uncontroverted evidence

submitted by MCBOE shows neither Henderson nor any other white male was hired for an

assistant football coaching position.  *See* Doc. 16, Exhibit 2, "Affidavit of Jimmy Barker";

Doc. 16, Exhibit 4, "September 26, 2006 Personnel Action Report - Coaching Supplements

Roster for Lanier High School."  Rather, the three positions approved for that year were all

filled by black males.  *See* Doc. 17 at p. 6 and Exhibit 4.  While Burkette continues to assert

in his response to the motion for summary judgment that a white male was hired, he does not

present any evidentiary support to contradict MCBOE's evidence that no white male was

hired to fill an assistant football coaching position that year.  *See* Doc. 20 generally.

Conclusory assertions in absence of supporting evidence are insufficient to withstand

summary judgment.  *Holifield*, 115 F.3d at 1564 n.6; *see also Williams v. Hager Hinge*, 916

F.Supp. 1163 (M.D. Ala. 1995) (citing *Evers v. General Motors Corp.*, 770 F.2d 984, 986

(11th Cir. 1985)) ("Bald conclusions, opinions, and hearsay without supporting specific facts

are not admissible and do not create a genuine issue of material fact.").  In fact, the evidence

Burkette attached to his response, specifically a number of affidavits, relates solely to his

claims of retaliation.  *Id*.  Burkette is unable to establish a prima facie case of race

discrimination, hence there is no need to continue with the *McDonnell Douglas* analysis and

summary judgment is proper as to the discrimination claim.

ii.     **Retaliation**

Retaliation is a separate offense under Title VII. *See* 42 U.S.C. § 2000e-3(a). To recover for retaliation, the plaintiff "need not prove the underlying claim of discrimination which led to her protest," so long as she had a reasonable good faith belief that the discrimination existed. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (citing *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491 (11th Cir. 1989)). Title VII recognizes two forms of statutorily protected conduct. § 2000e-3(a). An employee is protected from discrimination if (1) "he has opposed any practice made an unlawful employment practice by this subchapter" or (2) "he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id*.

A plaintiff asserting a Title VII retaliation claim may attempt to establish his claim by offering either direct or circumstantial evidence. *See Pollard v. Montgomery County*, 66 F.Supp.2d 1218, 1226-27 (M.D. Ala. 1999); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189-90 (11th Cir. 1997) (discussion of direct evidence for retaliation claim); *Hamilton v. Montgomery County Bd. of Educ.*, 122 F.Supp. 1273, 1279-80 (M.D. Ala. 2000) (discussing use of direct evidence and circumstantial evidence for Title VII retaliation claim). Direct evidence is "evidence, which if believed, proves existence of fact in issue without inference or presumption." *Merritt*, 120 F.3d at 1189 (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n. 6 (11th Cir. 1987)). Evidence that only suggests discrimination or

that is subject to more than one interpretation does not constitute direct evidence.  *Id*. (internal citations omitted); *see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) ("If an alleged statement at best merely suggests a discriminatory motive, then it is by definition only circumstantial evidence.").  If the nonmovant presents direct evidence that "if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence." *Merritt*, 120 F.3d at 1189 (quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)).  But when a plaintiff relies on circumstantial evidence, then the familiar *McDonnell Douglas* burden shifting analysis applies.  *Hamilton*, 122 F.Supp.2d at 1283.  If plaintiff should present direct evidence of retaliation, then by definition, it cannot be rebutted.  *Pollard*, 66 F.Supp.2d at 1232 n. 13.  Whereas, with circumstantial evidence, the plaintiff must first establish a prima facie case of retaliation.  *Id*.  "Stated another way, direct evidence generally is offered in lieu of a prima facie case, whereas the establishment of a prima facie case is accomplished with circumstantial evidence." *Id*.  Accordingly, the Court must first turn to the question of whether there was direct evidence of retaliation in this case.

In its motion for summary judgment, MCBOE asserts Burkette fails to present direct or circumstantial evidence of retaliation.  In its reply, MCBOE simply focuses on the circumstantial analysis.  However, in his response, Burkette attaches a signed and sworn Declaration wherein he states Washington directly told him that he had been "blackballed" and would never be considered for any coaching or administrative positions because he had

filed too many lawsuits against the Board.  *See* Doc. 20, Exhibit A.  An explicit statement by Washington wherein he states Burkette will not be considered for any positions because of his past EEOC litigation is direct evidence.  MCBOE is correct that statements relayed by 3rd parties to Burkette about Washington's statements are hearsay and therefore inadmissible; however, statements made by Washington directly to Burkette are not hearsay and thus admissible.[5]  *See* Doc. 20, Exhibit A at page 1.  MCBOE asks the Court strike these portions of the declaration averring that the declaration is inconsistent with Burkette's deposition testimony and thus a "sham affidavit."  As a result, the Court must look to the alleged inconsistencies between the deposition testimony and the declaration.  *See Thomas v. Alabama Counsel on Human Relations, Inc.*, 248 F.Supp.2d 1105, 1113 (M.D. Ala. 2003) (citing *Rollins*, 833 F.2d at 1530).

MCBOE cites to statements made in Burkette's deposition wherein he testified as follows:

> Q.   Do you know if she or any board members told anybody that you could not have the AD position because of your past lawsuits or any position because of your past lawsuits?
> A.   I'm not certain. The only thing I rely on is I continued to apply and continued to get denied.
> Q.   Do you know if she or any board members told anybody that you couldn't have the position for any reason?
> A.   No, ma'am.
> Q.   Past lawsuits, your race, they don't like the way you wear your coat or

---

[5]     It is possible these 3rd parties could be called as witnesses which may render the information admissible.  However, since statements made directly to Burkette are not hearsay, the Court need not determine whether the third party statements could be rendered to an admissible form for trial.

   anything?

A.  No, ma'am.

*See* Doc. 29 at p. 5-6 citing Burkette Depo. p. 52 at lines 4-17.  The above testimony relates

to a line of questioning by counsel whether Ms. Purcell, the superintendent, or any other

board members told anyone Burkette could not have the Athletic Director or any other

position because of his past lawsuits.  However, MCBOE fails to note other portions of the

deposition which concur with his Declaration.  For example, Burkette also testified as

follows:

Q.  Did Mr. Washington ever tell you that you could not be hired for offensive line coach because of your lawsuits against the board?

A.  Yes, ma'am.  He said that I wouldn't be coaching period because of the previous lawsuits, and he informed L.C. Cole of the same.  He informed committee members of the selection committee - the hiring committee.  He informed several members that it will be a waste of time if they hire me because of my previous background or reputation of suing the board.

Q.  I'm talking about what he told you.  What did he tell you about you couldn't be hired for this position or any coaching position because of your lawsuits?  Did he tell you anything to your face?

A.  Oh yes, Washington told me plenty of times.

Q.  Tell me about that.

A.  Washington told me – He said, home boy, you're just as good as gone; you can just – I tried to help you in the past; I tried to help you to get into administration, but there's really no future for you in coaching, Burkette – I can tell you that now – because of your lawsuits.  Said, at some point man, you've got to take the lick and keep going, you know; you can't continue to live off your lawsuits.

Q.  When was that conversation you had with him?

A.  That was one of several conversations we had.  That was in – As a matter of fact, that was the same day we had a convention with L.C. Cole, Lewis Washington, Mary Markum (phonetic).

Q.  Summer of '06?

A.  Yes ma'am.  No.  It was fall of '06.  It was in September.

*See* Doc. 16, Exhibit A, page 35, line 2 though page 36, line 13.  At best, MCBOE may argue there are contradictions within Burkette's own deposition, not that the deposition testimony completely conflicts with the Declaration.  Thus, the Court may consider the Declaration and the non-hearsay statements to make a decision.  Burkette's statements about what Washington told him directly would be direct evidence of retaliation and the *McDonnell Douglas* framework is inapplicable.  Further, MCBOE's discussion as to the "causal connection" prong of the prima facie case does not apply.[6]  Consequently, since there is direct evidence of retaliation, summary judgment cannot be granted as to the retaliation claim for the assistant coach position.

## VI.   Conclusion

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that:

(1)    *Defendants' Motion for Summary Judgment* (Doc. 35) be **GRANTED in part** and **DENIED in part**.

(2)    All claims against Defendant Washington in his official and individual capacity be dismissed with prejudice.

(3)    Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 be dismissed with prejudice.

---

[6]    The Court does note that MCBOE focuses its discussion as to the "causal connection" on the temporal connection.  While temporal proximity is certainly a factor for the court to consider, it is not the SOLE basis for establishing a causal connection.  Regardless, because Burkette has presented direct evidence, a discussion on the use of circumstantial evidence to establish a prima facie case is not required.

(4)     Plaintiff's Title VII claims related to the Athletic Director position be dismissed as time-barred.

(5)     The motion for summary judgment be denied as to the assertion that the claims related to the Assistant Football Coach position are jurisdictionally barred.

(6)     Plaintiff's Title VII race discrimination claim related to the Assistant Football coach position be dismissed with prejudice because Plaintiff failed to establish a prima facie case.

(7)     The sole remaining claim pending before the Court is Plaintiff's retaliation claim related to the Assistant Football Coach position.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **November 10, 2008**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein*

*v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 28th day of October, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE